A. A. TAYLOR, RESPONDENT, *v.* A. M. ROBERTSON, APPELLANT.

REPEALING STATUTES—ASSESSING OFFICERS—QUASI JUDICIAL ACTS — CERTIFICATE OF ASSESSMENT — ASSESSMEMT IN ANOTHER COUNTY — JURISDICTION — CAUSE TO BELIEVE OWNER WILL AVOID PAYING TAX—IRREGULAR SALE—IMPERFECT ABSTRACT.

1. Chapter 10, p. 86, Sess. Laws 1896, is repealed by chapter 129 of the same act, found on page 423, and known as the "Revenue Act."

2. *Liability of Officer for Quasi Judicial Act—Jurisdiction.*
   When an assessing officer has jurisdiction, and acts in the performance of an official duty, he should not be held civilly liable, although he may have erred in judgment in the performance of functions in their nature quasi judicial.

3. *Certificate of Assessment in Owners County—Liability of Assessor.*
   When an assessor of a county assesses stock in a county where the owner resides, and delivers to the owner a certificate showing such assessment under section 39 of the revenue act, such certificate, upon being delivered to any assessor of another county, where the stock may thereafter be, exempts such stock from further assessment for that year; and, if such assessor again assesses the stock, and sells it for the taxes, he is liable in damages.

4. *Cause to Believe Owner will Avoid Payment of Tax—Jurisdiction.*
   Under section 14 of the revenue act it is competent for the assessor of a county to assess personal property at any time before the first Monday in March, in case he has cause to believe that the owner is likely to avoid the payment of the tax by disposing of the property, or by removal thereof from the state. If, in the absence of such "cause to believe," he assesses and sells the property, because he believes the owner was not in the habit of paying his taxes, he acts without jurisdiction, and is liable for the wrong done. Such officer cannot have "cause to believe" the owner is likely to avoid the payment of the tax

when the tax receipt for the previous year and the certificate of assessment of the property by the assessor of the county where the owner resides is presented to him before the assessment and sale.

5. *Irregular Sale.*

Where 3,500 sheep were levied upon to pay a tax of $97, and in making the sale the officer accepted bids and sold enough sheep in the whole flock to satisfy the debt without separating them in number or kind, but leaving it with the buyer after sale to select enough sheep from the whole flock to cover the price paid, such sale is irregular, even if the purchaser consented to it.

6. *Improper Abstract.*

Abstracts should contain such parts of the record and testimony, under the rules of court, as will fairly present the case for review. Leaving out from an abstract pertinent and important portions of the evidence upon which the case depends, criticised.

(No. 877.   Decided Feb. 14, 1898.)

Appeal from the Seventh district court, Grand county. Jacob Johnson, *Judge.*

Action by A. A. Taylor against A. M. Robertson. Judgment for plaintiff. Defendant appeals. *Affirmed.*

Plaintiff commenced this action against the defendant to recover the value of certain sheep, alleged to have been taken and converted by the defendant. Defendant admitted the taking of the sheep, but justified such taking on the ground that he was assessor of Grand county, and that the sheep were duly assessed by him as such assessor while they were grazing in Grand county, on February 18, 1897, and sold by him, as such assessor, for the purpose of paying the tax assessed thereon, but not otherwise; that at the time of such assessment and taking as aforesaid the defendant was about to avoid the payment of the taxes and to remove the said sheep without the limits of Grand

county, and the state of Utah. Upon the trial it appeared
that Taylor resided in Utah county, and that the sheep
were taken into Grand county in January, 1897, for graz-
ing purposes. The assessor found the sheep in Grand
county on February 18, 1897, in charge of plaintiff's herds-
man, Burt Frost. At this time the assessor had been in-
formed that arrangements had been made to take the sheep
into another county. Frost, who had charge of the sheep,
informed the assessor that the sheep belonged to the
plaintiff, who resided in Utah county, and that he would
pay the taxes. Frost remarked to the assessor, "You
got us early this year," and said the sheep had not been
assessed before; that they intended to take the sheep
onto the Uintah reservation in about a month, if the
weather permitted. The assessor testified that he did
not know whether the sheep would be moved or not; only
knew what he was told; that he understood the sheep
would be moved onto the reservation; that he had no
information that sheep were to be removed from the
state; that he did not understand or have any informa-
tion that they were going to dispose of the sheep; that
he acted in the matter because he believed the owner
was not in the habit of paying his taxes. The assessor
informed Frost that he would assess the sheep. Frost
signed and swore to the statement and ownership of the
sheep by Taylor, who resided in Spanish Fork, Utah
county. The assessor, on the 18th day of February, 1897,
assessed the sheep to the plaintiff. The taxes amounted
to $97.12. Frost was informed that the tax was due
and should be paid or secured at once, and he so wrote to
plaintiff. The assessor also wrote to the plaintiff, de-
manding the payment of the tax, or security for its pay-
ment, or he would sell the sheep on the 8th day of March.
The plaintiff, by his attorney at Spanish Fork, replied by

letter that the sheep were not assessable at all in Grand county; that the owner lived in Utah county, and had paid taxes on the sheep the previous year. Inclosed in this letter to the plaintiff was a certificate of assessment for the sheep in question for the year 1897, showing that they were assessed in Utah county for the year 1897. This certificate was signed by N. Smith, deputy assessor for Utah county, and was duly mailed with the letter to the defendant, March 2, 1897, six days before the sale, and the letter was received by the defendant about two days before the sale. The attorney also asked the defendant to inform him by return mail if the proof was not sufficient to show that they did not intend to avoid paying the taxes on the sheep, and, if necessary, he would furnish a bond to pay the taxes, but that, if a sale was attempted, he would replevin the sheep. The plaintiff also wrote to his herder—which letter was shown to the defendant before the sale—that he would not move the sheep until the latter part of April. The tax receipt from the assessor for 1896 was also shown to defendant before the sale. One hundred and fifty-two sheep were sold out of a flock of 3,500, without being separated from the flock. The assessor says he sold the right to go into the flock and take 152 sheep, and that the purchaser agreed to take them in that way.

*Rhodes & Williams,* for appellant.

*J. W. N. Whitecotton,* for respondent.

MINER, J. (after stating the facts):

The above are substantially the facts as we glean them from the transcript. The abstract in this case is very defective, and does not contain material and important testimony given upon the trial. This court has been

compelled to glean many of the facts from recitals and testimony contained in a poorly-executed type-written transcript. In many respects testimony as to important facts governing the decision in the case has been left out, or so loosely and imperfectly presented that it has caused the court trouble and annoyance to ascertain what the actual facts are. This doubtless arose through mistake, as similar mistakes have arisen in many other cases, and we call attention to the fact now that such errors may be avoided in the future in the preparation of abstracts. The abstract should contain such parts of the record and testimony, under the rules, as will fairly present the case for review in this court. Anything else renders it more troublesome and injurious than if no abstract were filed. After trial, the court found that when the assessment was made, on the 18th day of February, 1897, the defendant had no cause to believe that the plaintiff was likely to avoid the payment of the taxes on the sheep by disposing of them, or by removal thereof from the state; that defendant's taking was wrongful; and as conclusions of law found that the defendant had no authority in law for assessing said sheep on the 18th day of February, 1897, nor at any time prior to the first day of March, 1897; that no justification was shown, and that the plaintiff was entitled to judgment for the value of the sheep. Chapter 10, entitled "Revenue," approved February 12, 1896, (Sess. Laws 1896, p. 86, § 4), reads as follows: "All real property in this state shall be listed on said blanks and assessed as owned and valued on the first Monday in March at 12 o'clock m., of the year in which the assessment is made. All personal property shall be listed and assessed any time after January 1st of each year and valued as of the date of its assessment." Later, at the same session, the

legislature passed the "Revenue Act" found on page 423, Sess. Laws 1896. This act was approved April 5, 1896. Included in such act is section 14, found on page 428, which reads as follows: "The assessor must, before the first Monday in June in each year, ascertain the names of all taxable inhabitants and all property in his county, subject to taxation, except such as is required to be assessed by the state board of equalization, and must assess such property to the person by whom it was owned or claimed, or in whose possession or control it was at 12 o'clock m. of the first Monday of March next preceding: provided, that nothing herein shall be taken to prevent the assessor from assessing any personal property at any time before the first Monday in March in case he shall have cause to believe that the owner thereof is likely to avoid payment of the tax thereon by disposing of the property or by the removal thereof from the state." Chapter 129, Sess. Laws 1896, enacted and approved after chapter 10 was approved, is a revision of the revenue laws of the state, and expressly repeals all laws in conflict therewith. Section 14 of this chapter is in conflict with chapter 10, inasmuch as section 14 requires the assessor, before the first Monday in June, to ascertain the names of all taxable inhabitants, and all property in the county, and assess the same to such persons by whom it was owned, etc., on the first Monday of March next preceding, and in certain specified cases and under certain circumstances permits the assessor to assess the property before the first Monday in March. Section 10 requires all personal property to be listed and assessed at any time after January 1st of each year, and to be valued at the date of the assessment, and all real property to be listed and assessed on the first Monday of March in each year. To permit both sections to remain in force would

create confusion and uncertainty in assessment, as well
as in the rights of persons resulting therefrom.

The next question to be determined is whether the
assessor had jurisdiction, under the statute, to assess
property on the 18th day of February, and to collect the
tax in question by a sale of the property, under the facts
shown. If the assessor had jurisdiction, and exercised
his honest judgment in assessing and collecting the tax,
if he acted in the performance of an official duty, and con-
fined himself within the limits of the statute, and if his
motives were honest, he should not be held civilly liable,
although he may have erred in his judgment. Discretion,
when vested in an officer, however, does not mean ab-
solute or arbitrary power. The discretion must be exer-
cised in a reasonable manner, and not maliciously, wan-
tonly, and arbitrarily to the wrong and injury of another.
This is held to be the rule applicable to public officers
who are bound to exercise their deliberate judgment in
the discharge of their official duties, and is applicable
to all inferior magistrates and others called to the per-
formance of functions in their nature and character quasi
judicial, while acting within their jurisdiction and the
legal scope of their powers as fixed by law. *City of Eureka*
v. *Wilson*, 15 Utah 53; Mechem Pub Off. §§ 636–639;
*Kendall* v. *Stokes*, 3 How. 86; Bish. Noncont. Law §§ 785–
788; *Easton* v. *Calendar*, 11 Wend. 90.

This brings us to the inquiry as to whether the defend-
ant, in assessing, levying upon, and selling the property
in question, was acting with jurisdiction, as provided by
the statute. Section 39, p. 435, of the revenue laws, reads
as follows: "Where horses, mules, cattle or sheep are
assessed in the county in which the owner of said stock
is a resident, the assessor of said county is hereby author-
ized, at the time of said assessment, to make and deliver to

said owner a certificate of said assessment, which certificate, upon being delivered to any assessor, shall exempt said stock from further assessment. Provided, that if said stock are summered and wintered in another county, the county where said stock are assessed shall on application of the county in which such stock have summered or wintered, remit half of the county tax to the county making the application." The testimony shows that some time before the sale of the sheep the defendant was furnished with a certificate of assessment of these sheep for the year 1897, signed by the deputy assessor of Utah county, and was duly notified that the owner was a resident of Utah county, and that he had paid the taxes on the sheep for the year 1896. The delivery to the defendant of this certificate of the assessment by the assessor of Utah county under section 39 exempted the stock from further assessment or sale for taxes in any other county for that year, and such other county where such stock were wintering or summering would have a right, on proper application to the county where the stock were assessed, to its proportionate share of the county tax so assessed. The evident object of the several provisions of the statute was to render such assessment uniform, and the collection of the tax certain, and at the same time allow the county where the stock were wintered or summered its proportion of the tax assessed upon the owner in the county where he resides. Section 34 provides, among other things, that, where stock are wintered in one county and summered in another, or if they range interchangeably in two contiguous counties the larger part of the year, when the owner is not a resident of either county, the tax may be assessed and collected in either county where the assessment is first made. In order to make an assessment under that section

before the first Monday in March, the facts, as stated in section 34, should appear to exist, and the assessor must also have cause to believe that the owner is likely to avoid the payment of the tax by disposing of the property, or by removal thereof from the state, as provided in section 14. Under section 35, if the stock were owned in one county, summered in another, and taken into another to be wintered before such time as they could be assessed in the county where owned, the assessor of the county where the stock were transient should list the same, and transmit the list to the assessor of the county where the stock is owned, and the duty of such assessor would be to assess the stock in the county where the owner lived, including an assessment for a special school tax as provided in this section. Under section 14 of this act it would be competent for the assessor to assess any personal property at any time before the first Monday in March, in case he should have cause to believe that the owner is likely to avoid the payment of the tax by disposing of the property, or by removal thereof from the state. At the time this assessment was made the assessor had simply heard that the sheep would be moved onto the reservation in March following. He says he had no information that the sheep were to be moved out of the state. He did not understand that the owner was going to dispose of the property to avoid the payment of the tax. The defendant says that he acted simply because he believed the owner was not in the habit of paying his taxes. Such officer could hardly be said to have such "cause to believe" when he is satisfied that the owner will not dispose of the property, or remove it from the state to avoid such payment. The assessor should not assume that a fact or "cause" exists when he knows or has good reason

to believe to the contrary. The "cause to believe" should be a good cause to believe, and based upon some fact within his knowledge, or upon some reliable information that carries conviction to his mind as an honest man, that the owner is likely to avoid the payment of the tax by disposing of the property or by removing it from the state. Neither could such officer have just cause to assess or sell the property when it consists of animals that he knows are owned in another county by a party who paid the taxes for the previous year, and that the assessor of the county where the owner resides has issued a certificate of assessment to the owner under section 39, reciting that the same property has been assessed for the same year, and that the stock is exempt from further assessment. The error committed by the assessor was not an error of judgment, when acting with jurisdiction, but an error of law, when acting without jurisdiction. We hold that the assessment and sale were illegal, and that the assessor had no jurisdiction, under the statute, to assess and sell the property under his assessment of February 18, 1897.

The record also shows great informality in the sale. It appears that a flock of 3,500. sheep were levied upon to satisfy the tax and costs; that enough sheep in the flock, without specifying the number or kind, were offered for sale to satisfy the same; that enough sheep were sold at 75 cents per head to bring the desired amount, and that this required 152 sheep. These sheep were not separated from the rest of the flock, but sold indiscriminately in the flock, and a bill of sale executed by the assessor to the purchaser, who afterwards selected and separated 152 sheep from the flock and drove them away. This proceeding was entirely improper and cannot be upheld, even if the purchaser consented to it.

No question as to the constitutionality or legality of the statute has been raised by either party, and therefore that question is not before this court. We find no error in the findings, decree, or judgment. The case is remanded to the district court, with directions to affirm the judgment appealed from.

ZANE, C. J., and BARTCH, J., concur.