268 P.2d 677

**MURPHY v. GRAND COUNTY et al.**

**No. 7998.**

Supreme Court of Utah.

March 25, 1954.

McDONOUGH, Justice.

Appeal from a judgment of the lower court granting respondent the salary of his predecessor in the position of County Attorney of Grand County in lieu of the salary fixed for the position by the Board of County Commissioners of Grand County.

On April 3, 1950, the Board of County Commissioners of Grand County at a regularly held meeting and in pursuance of the power vested in the board by U.C.A.1943, 19–13–15 (now U.C.A.1953, 17–16–15) set the salaries for the various county officials. A noticeable change was made in the salary for County Attorney, which had formerly been $1,000 per year, when the salary for the coming term, beginning January 1, 1951, was set at $10 per year. Plaintiff was elected and qualified for office by taking his oath and furnishing his bond at the beginning of that term, and subsequently presented a claim based on the rate of $1,000 per year and when this claim was denied, brought suit. The trial court, finding that $10 per year was tantamount to destruction of the office by the board, held the action of the board in setting such salary void.

■ It has been held that the statute fixing the maximum salaries for officers of counties of the five classes, U.C.A., 1943, 19–13–14 (U.C.A.1953, 17–16–14) determines merely the maximum beyond which the county boards may not fix a salary but leaves the exact amount to be paid below

Mitchell Melich, Moab, for appellants.

Hammond & Hammond, Price, for respondent.

that maximum to the discretion of the board. Johnson v. Bankhead, Utah, 232 P.2d 372. The question here presented, then, is whether the courts may interfere with a determination of the board which sets the salary at only one per cent of the salary paid for the term immediately preceding or slightly more than one-half of one per cent of the statutory maximum for a county of that class.

In 14 Am.Jur., Counties, Sec. 33, the rule is laid down as follows:

"The relationship of the courts to the other departments of government is such that they cannot perform executive duties or interfere with the performance of legislative duties. They are not endowed with visitorial powers to approve or disapprove the manner in which county commissioners exercise the powers conferred upon them. They cannot reach or control the commissioners in this regard unless in some manner the latter have brought themselves within judicial cognizance. So long as the commissioners act honestly and in good faith and keep within the limits of the powers given them by the law, the courts have no authority to interfere with or control their legitimate discretion."

This broad rule for the limits upon discretion vested by the legislature in public officers has been further qualified in this jurisdiction: "Discretion, when vested in an officer, however, does not mean absolute or arbitrary power. The discretion must be exercised in a reasonable manner, and not maliciously, wantonly, and arbitrarily to the wrong and injury of another." Taylor v. Robertson, 16 Utah 330, 52 P. 13.

The difficulty here involved is created by the fact that the trial court, although recognizing this rule, determined that the amount of compensation alone was evidence of an abuse of discretion on the part of the county board, for no evidence was presented to prove that the board lacked jurisdiction or acted other than in good faith. We have no evidence in the record transmitted to us showing unreasonableness in the board's action, and thus must inquire whether the fact of the drastic reduction alone is conclusive evidence of either an arbitrary and unreasonable action on the part of the board or bad faith in seeking to discourage candidates for office. The meager evidence which we may consider is gleaned from admissions, stipulations, and judicial notice. Grand County is a county of approximately 2,000 inhabitants. In many of our 29 counties, the county attorney is not required to be a lawyer and plaintiff is not a member of the Utah Bar. We have nothing to tell us of his qualifications as a legal advisor to the county. No one ran for the position of county attorney at the time of his election, which was achieved through a write-in vote of 44 votes.

Whether or not the action was arbitrary in the light of services rendered to the

county cannot be determined from the statute outlining the powers and duties of a county attorney, U.C.A.1943, 19–15 (now U.C.A.1953, 17–18), for we have no evidence of the extent of need of the county for such services or how often such services are rendered. The mere fact that the statute empowers an elected person to perform certain legal functions, regardless of his lack of training, is not evidence that plaintiff is capable of performing or in fact does perform those functions. In the case of De Merritt v. Weldon, 154 Cal. 545, 98 P. 537, 16 Ann.Cas. 955, the court recognized the statutory duties of the town marshal of Ukiah City (1800 inhabitants) as consisting of execution of all process, collecting town taxes and licenses, and being in charge of the police department, the city prison, and any chain gang; but upon evidence that there was no prison nor chain gang, held that $10 per month salary was not an abuse of discretion by the town board of trustees, nor evidence of bad faith or fraud, such as would nullify the action of the board.

It is conceivable that, in the smaller counties, the office of county attorney is one for which qualified persons will compete merely for the prestige of the office. We cannot determine the amount of time necessary for the county attorney to devote to his official position and have no guides by which to say that the board acted arbitrarily. Additionally, we are met by the presumption that a stated compensation attached to an office is adequate for the services. 43 Am.Jur., Public Officers, Sec. 393. In the absence of clear evidence of a failure by the board to exercise a legal discretion, the court cannot substitute its views of proper salaries for those of a board vested with discretion by the legislature.

The few cases in point on this matter adopt the principle that there is a limitation to the discretion of the administrative bodies in fixing salaries in that they cannot fix the salary so low as to amount to destruction of the office or to create a situation where no competent person would perform the duties of the office for that compensation. However, the only cases which we have discovered to which the limitation was applied to defeat the action of the board, were cases where there was a positive showing of bad faith on the part of the members of the board. State ex rel. Yeargin v. Maschke, 90 Wash. 249, 155 P. 1064; Board of Sup'rs of De Soto County v. Westbrook, 64 Miss. 312, 1 So. 352. In the case of State ex rel. Thurmond v. City of Shreveport, 124 La. 178, 50 So. 3, 134 Am.St.Rep. 496, the court merely raised the salary to the statutory minimum. In the cases of City and County of Denver v. Bigelow, 113 Colo. 170, 155 P.2d 998, De Merritt v. Weldon, 154 Cal. 545, 98 P. 537, 16 Ann.Cas. 955, supra, Locke v. City of Central, 4 Colo. 65, 34 Am.Rep. 66, where there was no allegations of fraud or bad faith, the courts refused to interfere with a board's determination of salaries to be paid to county officials, even though expressing

the view that the court's determination of a reasonable salary would be much greater in amount.

The fact that no one ran for the office of county attorney in Grand County for the term beginning 1951 is not evidence of a design on the part of the board to abolish the office. We do not know if the previous attorney was elected on a write-in vote when the compensation was fixed at $1,000. The argument that no competent person would perform the duties for a salary fixed at so low a rate was squarely met by the court in Butler v. Williams, 207 Cal. 732, 279 P. 992, 994, where, as here, plaintiff took office after the salary had been reduced:

"Nor do we think the petitioner has any just cause to complain. The salary of the office of county surveyor of said county was fixed at the sum of $10 per month more than a year before he was elected to that position. He knew at the time he became a candidate for said office and at the time he qualified and took the oath to perform the duties of the office what the salary was and would be during the term for which he was elected. The fact that he accepted the office with the salary as fixed at that time and that he has continued to discharge its duties is a conclusive answer to his contention that the Legislature by fixing the salary at this low figure has thereby destroyed the office and that no

competent person would perform the duties thereof for the amount fixed as salary. No doubt the prestige enjoyed by petitioner as county surveyor of his county and the right given him under the statute to engage in private practice are of substantial value to him."

The determination of what is a reasonable compensation for a particular service rendered by a public officer rests in the discretion of a public board and the court will not revise its action in the absence of clear evidence of such manifest abuse of power as to show that the board failed to exercise a legal discretion.

We do not hold that an express showing of bad motive is necessary to make out a case where the effect of the board's action is to abolish an office provided for by the constitution. If this were necessary, very often the taxpayer or office-holder would have no redress, for only those in conspiracy would have evidence necessary to make the proof. However, because of the court's reluctance to interfere in matters properly within the province of an administrative body, some proof must be offered to show arbitrariness and abuse of discretion in that board. It is as difficult for this court to determine that the board has acted unreasonably in setting the salary at ten dollars per year as it would be for this court to set the reasonable value of plaintiff's services in the first instance without some evidence of the actual func-

tions of the County Attorney in Grand County.

The board could not constitutionally abolish the office by refusing to appropriate a salary as compensation for the position, Constitution of Utah, Art. XXI, Sec. 1, nor does it have the power to terminate the salary of an official during his elected term and thus vacate the office, Argyle v. Wright, 63 Utah 184, 224 P. 649. However, the Board does have the power to determine the value of the office to the county under our statute U.C.A.1943, 19–13–15 (now U.C.A.1953, 17–16–15) and the courts will not usurp that power.

Plaintiff has not presented a claim upon which relief may be granted. The judgment of the trial court is reversed. Each party to bear its own costs.

CROCKETT and HENRIOD, JJ., concur.

WADE, Justice (dissenting).

I agree that the Board of County Commissioners "cannot fix the salary so low as to amount to destruction of the office or create a situation where no competent person would perform the duties of the office for that compensation," and that "an express showing of bad motive is" not necessary. Fixing the salary of the county attorney for Grand County at $10.00 per year is no compensation at all and could have no other effect than to destroy the office or make it so that no competent person would perform the duties of that office for that sum. It seems clear that such salary would be no inducement to a competent person to accept the office and perform the duties thereof. This case is distinguishable from Butler v. Williams, 207 Cal. 732, 279 P. 992, in that there the salary was fixed at $10.00 per month, twelve times as much as here, and the term of office covered a period from 1927 to 1931 when the value of a dollar was much greater than now.

The office of county attorney is created by express constitutional provision,[1] and the statutory duties thereof cover the whole range of governmental activities in the county. He must cause the arrest of and prosecute in the justices' court all public offenders in the county and assist the district attorney in his prosecution in the district court. He must represent the interests of juveniles charged with delinquency in the juvenile court, represent the state in juvenile custody cases and prosecute persons charged in the juvenile court with contributing to the delinquency of minors; he must approve or reject all claims for juror fees and fees for witnesses in criminal cases; he must defend all actions against the county and prosecute for the county all actions for debt, fines, penalties and forfeitures; he must give his opinion to all county, district and precinct officers

1. Constitution of Utah Article VIII, § 10.

418

and must give receipts and account monthly for all moneys and property received by him in his official capacity.[2] He is the official adviser of the Board of County Commissioners and must pass on all claims against the county.[3] He must forward to the district attorney the transcript of all examinations before a justice of the peace of persons charged with felony and held for the district court with a list of the witnesses for the state and a statement of the facts.[4] He must institute suits to recover all forfeitures by the county treasurer.[5] He must appear and represent the child in cases for the annulment of an adoption.[6] No warrant for the arrest of any person shall be issued by a justice of the peace except on his approval.[7] He must institute proceedings to enforce the banking laws,[8] institute bastardy proceedings and examine the woman in the presence of the defendant,[9] prosecute violations of the blue sky laws,[10] and in all cases where foul play is suspected he must receive the death certificate and investigate the bodies and circumstances of death and make recommendations on whether an inquest should be held;[11] he must be served with summons in all divorce cases charging permanent insanity and must investigate the merits of the case and defend the rights of the person so charged,[12] and witness the drawing of the names of all trial and grand jurors.[13] He must prosecute the violation of election laws,[14] laws requiring campaign statements,[15] and the corrupt practice act.[16] He must examine and certify the fees of all jurors and all witnesses in criminal cases,[17] institute suits to recover all moneys unlawfully paid by the county;[18] upon request, aid in the prosecution or defense of workmen's compensation suits,[19] collect property of deceased from justice of the peace and the costs of inquests from the estate of the deceased,[20] prosecute military offenses,[21] institute proceedings for a bond to keep the peace and prosecute the violation thereof,[22] and is the legal adviser of the state engineer on matters in his county.[23] He must prosecute on the assessor's bond for failure to complete assessments,[24] bring an action to set aside any unlawful

2. Sec. 17–18–1, U.C.A.1953 and 55–10–12, U.C.A.1953.
3. Sec. 17–18–2, U.C.A.1953.
4. Sec. 17–18–3, U.C.A.1953.
5. Sec. 17–24–13, U.C.A.1953.
6. Sec. 78–30–13, U.C.A.1953.
7. Sec. 77–12–1, U.C.A.1953.
8. Sec. 7–1–23 and 24, U.C.A.1953.
9. Sec. 77–60–2, U.C.A.1953.
10. Sec. 61–1–27, U.C.A.1953.
11. Sec. 26–4–8 and 9, U.C.A.1953 and Sec. 77–58–22, U.C.A.1953.
12. Sec. 30–3–1, U.C.A.1953.
13. Sec. 78–46–21, U.C.A.1953.
14. Sec. 20–13–11, U.C.A.1953.
15. Sec. 20–14–14, U.C.A.1953.
16. Sec. 20–14–23, U.C.A.1953.
17. Sec. 21–5–7, U.C.A.1953.
18. Sec. 17–5–12, U.C.A.1953.
19. Sec. 35–1–32 and 101, U.C.A.1953.
20. Sec. 77–58–20 and 21, U.C.A.1953.
21. Sec. 39–1–50, U.C.A.1953.
22. Sec. 77–4–15, U.C.A.1953.
23. Sec. 73–2–13, U.C.A.1953.
24. Sec. 59–5–35, U.C.A.1953.

levy,[25] institute and prosecute actions in behalf of the trade commission,[26] and prosecute for the operation of all unlawful pools and trusts.[27]

Though the county attorney is not required to be admitted to the bar, still it was the duty of the board of county commissioners to make his compensation sufficient to induce a competent person to accept the office and perform the duties thereof efficiently. If the salary was fixed so low because they do not expect competent services, then their purpose in fixing it so low is to destroy the office and not be bothered with such an officer. It is not material here whether this plaintiff efficiently performed any services or not. It was the board's duty to fix reasonable compensation for the services required of that office so that the office would perform its proper functions, and not to reduce the compensation so low that no services could be expected therefrom. The latter would have the effect of destroying the office, which the law forbids the board to do.

Grand County has an assessed valuation of $4,976,689 and a population of about 2000 people. Even assuming that its population is exceedingly law abiding and its county business is unusually small, a reading of the duties of the county attorney makes it very clear that compensation for the discharge of the duties of that office would amount to many times the nominal sum allowed. There are bound to be some arrests made, a lot of claims presented to the county and much advice and some litigation over claims against the county which he should attend to. I think it entirely outside of the bounds of reason to hold that $10.00 per year is any compensation for the services required, and that such a salary could have any other effect than to destroy the office and render it incapable of being of any value to the county.

WOLFE, C. J., does not participate herein.