No. 80-44

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

LINDA REEP,

Petitioner and Respondent,

vs.

BOARD OF COUNTY COMMISSIONERS OF
MISSOULA COUNTY, STATE OF MONTANA
et al.,

Appellants and Respondents.

Appeal from:   District Court of the Fourth Judicial District,
               In and for the County of Missoula, Montana
               Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

    For Appellants:

        Robert L. Deschamps, III, County Attorney, Missoula,
          Montana
        Michael W. Sehestedt, Deputy County Attorney, argued,
          Missoula, Montana

    For Respondent:

        Morrison Law Offices, Missoula, Montana
        Daniel Kemmis argued, Missoula, Montana

    For Amicus Curiae:

        Garrity, Keegan and Brown, Helena, Montana
        G. Steven Brown argued, Helena, Montana

                              Submitted:   November 24, 1980

                              Decided: JAN 2 8 1981

Filed: JAN 2 8 1981

Thomas J. Kearney
                              Clerk

Honorable Leonard H. Langen, District Judge, sitting in place of Mr. Justice John C. Sheehy, delivered the Opinion of the Court.

Petitioner, the Missoula County auditor, brought this action seeking a writ of mandate compelling respondent, county commissioners, to include in the final county budget funding for a larger staff for the auditor's office than was proposed in the preliminary county budget. Following the quashing of petitioner's original writ, an amended writ was filed and the cause heard by the court sitting without a jury in a trial which lasted five days. The District Court heard testimony from 13 witnesses, amounting to over 400 pages of transcript, admitted over 35 exhibits into evidence, and then made findings of fact and conclusions of law, the relevant portions of which are now set forth verbatim:

"FINDINGS OF FACT

"2. A majority of the commissioners determined that the auditor was conducting examinations of the books and records of the county broader in scope than contemplated by the statutes defining the auditor's duties.

"3. A majority of the commissioners objected to certain audits termed by them as 'management' audits, which the auditor defined as 'compliance' audits. These audits included opinions by the auditor or her staff on whether county policies were in compliance with applicable statutes or regulations, or whether these policies were in the best interest of the county in a financial sense. All opinions were delivered in connection with the procurement, investment or use of county funds.

"4. A majority of the commissioners as a matter of deliberate policy budgeted the auditor to prevent her from conducting audits they deemed overly broad in scope.

"5. Audits of the sort found improper by the commissioners are conducted by private auditors and accountants in the general and normal course of their business. These audits of necessity require the exercise of judgment and the statement of conclusions broaching on the rendering of legal opinions. These audits do not include studies of the management efficiency of administrative practices, and efficiency audits were not conducted by the auditor.

"6. A majority of the commissioners desired to limit the auditor's examinations to bookkeeping and account balancing, and they budgeted the auditor accordingly.

"7. The budget amounts requested by the auditor attributable to all audits reasonably provides for their performance.

- 1 -

"8. The auditor was and is now qualified to conduct audits of the scope and type to which the commissioners have objected, and any audits customarily and usually conducted by a Certified Public Accountant. All the disputed audits were done in a regular manner consistent with these standards.

"9. The auditor has necessarily expended attorneys fees and costs in this suit, the amount being not yet known."

"CONCLUSIONS OF LAW

"2. The term 'examination of the book and accounts . . .' contained in MCA 7-6-2409(1) includes audits of broad scope conducted in the manner and to the extent countenanced by generally accepted accounting and auditing principles and methods applicable to an independent auditor. It is within the discretion of the auditor to determine the scope and extent of audits within the limits set by generally accepted auditing accounting principles and methods. Under MCA 7-6-2408(2) auditors have broad discretionary powers of investigation.

"3. The term 'full and complete statement of the money received and disbursed. . .,' MCA 7-6-2409(2), is a minimum requirement, not a limitation on the scope of the examinations by the auditor.

"4. The commissioners have a clear legal duty to fund the county auditor to carry on examinations of books and records, including audits of the scope and extent objected to.

"5. Failure to fund these audits was a failure to perform a clear legal duty and an abuse of discretion.

"6. Mandamus lies to compel the performance of a clear legal duty and to correct an abuse of discretion.

"7. The commissioners may either accept the budgeting requested by the auditor for the auditing functions they wished to prevent or hold further hearings and thereafter reasonably provide funds to allow their performance.

"8. The auditor should receive attorney's fees in a reasonable amount and costs."

Later the District Court made supplemental findings of fact and conclusions of law, the relevant portions of which are set forth verbatim:

"SUPPLEMENTARY FINDINGS OF FACT

"1. A majority of the commissioners caused funds to be subtracted from the budget of the auditor to limit her ability to conduct audits of any scope beyond that of bookkeeping and account balancing."

- 2 -

"SUPPLEMENTARY CONCLUSIONS OF LAW

"2. An elected county auditor is an agent of the people, having important official duties for the faithful discharge of which she is directly responsible to the people. Under MCA 7-6-2408(2) auditors have broad discretionary powers of investigation. In performing her duties, the auditor must have sufficient independence from the commissioners to permit her to determine which offices to audit, at what time, and what the scope of such audits should be, within the limits set by generally accepted auditing and accounting principles and methods.

"3. Failure to fund audits of scope and extent objected to was a failure to perform a clear legal duty and such an abuse of discretion as to amount to no exercise of discretion at all.

"4. Although the commissioners have discretionary powers to set budgets, and although they may set a budget limit for an elected official below that requested by the official, they cannot use the budget to prevent another elected official from fulfilling a statutory duty. The commissioners may adopt a budget which has the incidental effect of causing a budgeted office to reduce its activity in some area, even if that activity is one necessary to a statutory duty; but, the commissioners may not single out an activity necessary to a statutory duty and preclude it by budgetary restriction."

In accordance with the findings of fact and conclusions of law the District Court then ordered that mandamus issue. From that order the board of county commissioners appeals.

The proper standards to be met before issuance of a writ of mandamus are set forth in Cain v. Department of Health, etc. (1978), 177 Mont. 448, 582 P.2d 332, 334, 35 St.Rep. 1056, 1058:

"A writ of mandate will issue only where the person seeking to invoke it is entitled to have the defendant perform a clear legal duty and there is no speedy or adequate remedy in the ordinary course of law. State ex rel. Swart v. Casne (1977), ___ Mont. ___, 564 P.2d 983, 34 St.Rep. 347. Ordinarily mandamus will not lie to compel the performance of a discretionary function. State ex rel. Butte Youth Service Center v. Murray (1976), 170 Mont. 171, 551 P.2d 1017, 33 St.Rep. 610. However, if there has been such an abuse of discretion as to amount to no exercise of discretion at all, mandamus will lie to compel the proper exercise of powers granted. Barnes v. Town of Belgrade (1974), 164 Mont. 467, 524 P.2d 1112."

It is clear that the county commissioners had a clear legal duty to fund the office of the county auditor so that she could adequately perform her duties at the minimum level imposed by the state legislature under sections 7-6-2407 through

7-6-2412, MCA. Therefore we shall first address ourselves to this issue.

Section 7-6-2407, MCA, requires a county auditor to audit and investigate claims against the county, and section 7-6-2408, MCA, authorizes the auditor to administer oath or affirmation and to issue process to compel attendance of witnesses in order to carry out these duties with respect to claims. However, the auditor's duties under sections 7-6-2407 and 7-6-2408 are not in issue in this lawsuit.

Respondent's right to mandamus is grounded in the interpretation to be given to section 7-6-2409, MCA, which provides that it is the duty of the county auditor to examine the books and accounts of the county treasurer and certain other designated county officers within 15 days prior to the first regular session of the board of county commissioners in March, June, September, and December of each year unless a longer time is granted to the auditor by the board.

Subsection (2) of section 7-6-2409 provides that the quarterly report shall contain a full and complete statement of the money received and disbursed by each of the officers since the last examination and report. For the purpose of this section the county auditor has free access to all books and papers in each of the offices.

We hold that the District Court erred in concluding that the county auditor is required to perform the broad duties described in the District Court's conclusions of law.

The Montana Supreme Court has already decided the obvious--the terms "audit" and "examine" are not synonymous. An audit is more extensive than an examination and an audit includes an examination. Judith Basin Co. v. Livingston, et al. (1931), 89 Mont. 438, 298 P. 356. Th fact that the legislature chose not to use the term "audit" in section 7-6-2409, MCA, is significant. We hold that the legislature intended the county auditor to examine the books and report a statement of money received and

- 4 -

disbursed. Nothing more is required. A detailed audit is not required to report receipts and expenditures. The legislature clearly intended the auditor to perform a bookkeeping and account balancing function under section 7-6-2409, MCA.

This interpretation is reinforced by an examination of the Legislative Audit Act (sections 5-13-101 et seq., MCA) and the Reports and Audits Act (sections 2-7-101 through 2-7-105 and 2-7-501 through 2-7-521, MCA).

The language of the Legislative Audit Act leaves no room to doubt that an audit, and not an examination, is required under that Act. Furthermore, the Legislative Audit Act specifically authorizes the legislative auditor to report possible penal violations to the attorney general, and instances of misfeasance, malfeasance and nonfeasance to the governor. The authority to conduct broad management and compliance audits is clearly specified.

The Reports and Audits Act also indicates the county auditor's functions under section 7-6-2409, MCA, are limited to bookkeeping and account balancing duties. Section 2-7-503, MCA, requires the Department of Community Affairs to audit all counties annually. The term "audit" is used consistently throughout the Act. Sections 2-7-505 and 2-7-513, MCA, specify that the audit must be "comprehensive" and must include comments and opinions concerning: (1) balance sheets; (2) results of operations; (3) compliance with state statutes and regulations; (4) recommendations for improvement; (5) the adequacy of financial presentation; and (6) how previously noted deficiencies have been addressed.

Remaining provisions of the Reports and Audits Act require that an exit interview be conducted (section 2-7-512, MCA), that audits be conducted in accordance with generally accepted accounting principles (section 2-7-505, MCA), and that certain procedures be followed in preparing and publishing the audit reports (sections 2-7-504, 2-7-506, 2-7-515 and 2-7-521, MCA).

- 5 -

In short, the legislature has expressly conferred authority to conduct detailed management and compliance audits of county governments on the Department of Community Affairs.

On the other hand, the duties of the county auditor are confined to bookkeeping and account balancing functions under section 7-6-2409, MCA, which provides:

"Examination of County Books and Accounts. (1) It is the duty of the county auditor to examine the books and accounts of the county treasurer, the county clerk and recorder, the sheriff, the clerk of the district court, and all other county and township officers within 15 days prior to the first regular session of the board of county commissioners in March, June, September, and December of each year unless a longer time is granted to the auditor by the board.

"(2) The quarterly report shall contain a full and complete statement of the money received and disbursed by each of the officers since the last examination and report. For the purpose of this section, the county auditor has free access to all books and papers in each of the offices."

The District Court's supplementary conclusions of law invoke the "strict accountability" provision of the Montana Constitution to justify a finding that a county auditor is required to perform broad management and compliance audits. However, there is no factual or legal basis for the District Court's conclusion.

Art. VIII, Section 12, 1972 Montana Constitution, reads:

"Strict accountability. The legislature shall by law insure strict accountability of all revenue received and money spent by the state and counties, cities, towns, and all other local governmental entities."

The Constitution indicates that the strict accountability function is not self-executing. The legislature is directed to insure strict accountability of all public funds. The legislature has responded by passing laws requiring the Department of Community Affairs to conduct "comprehensive audits" of counties and all local government entities (sections 2-7-501 through 2-7-521, MCA). This expansive audit authority was passed in 1974 (Laws of Montana (1974), Ch. 3̶4̶7̶ 348) and recodified in 1975 (Laws of Montana (1̶9̶7̶4̶ 1975), Ch. 380).

As stated in section 2-7-502, MCA:

"The purpose of the audit of the affairs of the

- 6 -

governmental entities as set forth in this part shall be to insure constituent interests by determining that compliance with all appropriate statutes and regulations is accomplished, that the financial condition and operation of the entities are reasonably conducted and reported, that the stewardship of such entities is conducted in such a manner as to preserve and protect the public trust, and to accomplish, with economy and efficiency, the duties and responsibilities of the entities in accordance with the legal requirements imposed and the desires of the public."

The legislature has responded to the mandate of Art. VIII, Section 12, 1972 Montana Constitution, by expanding the powers of the Department of Community Affairs and not the county auditor.

We have still further grounds for our holding.

There are no professional qualifications that must be satisfied to serve as a county auditor. The only qualifications for this officer are that he be of voting age and a resident of the county for two years (section 7-6-2403, MCA). Thus a person with no accounting or auditing experience can be a county auditor. The legislature certainly could not have intended the county auditor to perform broad management and compliance audit functions unless the legislature were willing to impose professional qualifications for the office.

This conclusion is reinforced by the fact that the legislature has imposed strict professional requirements for the person selected to serve as legislative auditor. The legislative auditor must have a degree from an accredited university with a major in accounting or a similar field. Furthermore the legislative auditor must have at least two years experience in governmental accounting and auditing (section 5-13-302, MCA).

Furthermore the county auditor has no authority under Montana law to increase the duties of her office beyond that described in the statute. Only the board of county commissioners may do this. (Section 7-6-2412, MCA, provides that the county auditor shall also perform such other duties, clerical or otherwise, as he may be directed to perform by the county commissioners.)

We hold that the legal duty of the appellant was to ade-

quately fund the county auditor's office so that she can perform the minimum duties required by law. The board of county commissioners, in their discretion, may enlarge the duties of the county auditor (section 7-6-2412, MCA), and if this should occur, it would follow that the board should provide additional funding.

This Court has the duty to scrutinize the manner in which the decision of the District Court was made and to determine if the judge acted arbitrarily. We hold that the District Court erred in its conclusions of law. Likewise the court erred in its findings of fact insofar as the same are inconsistent with the law as expressed in this opinion.

We hold that our ruling with respect to the minimum level duties of the county auditor should be sufficient to cause petitioner's petition for writ of mandate to be dismissed. Finding of fact No. 6 would indicate that the county commissioners, in fact, have budgeted sufficient funds for the county auditor to perform her duties in accordance with this opinion. However, this Court cannot make a finding of fact nor can it direct the District Court to make such a finding. Its jurisdiction is strictly appellate.

This cause is remanded to the District Court to make amended findings of fact and conclusions of law in accordance with this opinion.

_____
Hon. Leonard H. Langen, District Judge, sitting in place of Mr. Justice John C. Sheehy.

We concur:

_____
Chief Justice

_____

_____
Justices

This cause was submitted prior to January 5, 1981.

- 8 -

Mr. Justice Gene B. Daly dissenting:

I must respectfully dissent. First of all, for clarification purposes, I find it necessary to comment on the paragraph in the majority opinion concerning an auditor's professional qualifications. This paragraph is simply not involved in this case, has no place in the opinion, and demonstrates no more than a desperate attempt by the majority to justify its holding in this matter, which is truly against the facts. Quite frankly, our local governmental setup is replete with offices of this kind which, by statute, do not require a degree; however, local governments are furnished with necessary funds to provide professional staffs.

I agree that the proper standard of review in an appeal of a mandamus action was established in Cain v. Dept. of Health, etc. (1978), 177 Mont. 448, 582 P.2d 332, 35 St.Rep. 1056, as set forth in the majority opinion. This Court has indicated that arbitrary or capricious action by an administrative board is an abuse of discretion. State ex rel. Sanders v. Hill (P.E.R.S.) (1963), 141 Mont. 558, 381 P.2d 475.

In my opinion, appellants' argument is tenuous at best. They argue that the trial court abused its discretion when it determined that the County Commissioners abused their discretion and in failing to adequately fund the County Auditor's office. As provided by statute, both parties to this action have broad discretionary powers. The Board of County Commissioners has discretion in budgeting county offices and supervising their conduct, sections 7-4-2110, 7-6-2314(e), MCA. The County Auditor has broad discretionary powers of investigation, section 7-6-2408(2), MCA. This Court's task, therefore, is twofold: first, to determine if the District Court abused its discretion in issuing a writ of mandamus; and second, to

determine if appellants abused their discretion in establishing the budget for the Auditor's office.

In Porter v. Porter (1970), 155 Mont. 451, 457, 473 P.2d 538, 541, this Court stated:

> ". . . a reviewing court is never justified in substituting its discretion for that of a trial court. In determining whether a trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but, rather did the trial court in the exercise of its discretion act arbitrarily without employment of conscientious judgment or exceed the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice."

Also, in Grant v. Michaels (1933), 94 Mont. 452, 23 P.2d 266, 269, and Taylor v. County Commissioners (1954), 128 Mont. 102, 111, 270 P.2d 994, this Court said: ". . . the phrase 'abuse of discretion' implies, not merely an error in judgment, but perversity of will, prejudice, passion, or moral delinquency . . ." In reviewing the decision of the lower court, it is not our function to enter the battle of semantics to determine the duties of the Commission and the Auditor, or of the Department of Community Affairs; rather, we must decide if the trial court acted reasonably in arriving at a conscientious decision.

In 14 Am.Jur. Counties, § 33 at 205, the rule is stated as follows:

> "The relationship of the courts to the other departments of government is such that they cannot perform executive duties or interfere with the performance of legislative duties. They are not endowed with visitorial powers to approve or disapprove the manner in which county commissioners exercise the powers conferred upon them. They cannot reach or control the commissioners in this regard unless in some manner the latter have brought themselves within judicial cognizance. So long as the commissioners act honestly and in good faith and keep within the limits of the powers given them by the law, the courts have no authority to interfere with or control their legitimate discretion."

In her petition, respondent argues that the Commissioners have a legal duty to make available to the County Auditor both the time and the staff necessary to perform the duties of examination and accounting of county books; and, by cutting the Auditor's budget, she is prevented from adequately performing her statutorily created duties. Therefore, the Commissioners did not act within the limits of the power given them by law, and it is within the authority of the District Court to intervene and control the discretion of the Commissioners. The District Court does have such authority; and, thus, this case was properly brought.

As set forth in the majority opinion, the District Court made extended findings of fact and conclusions of law, and it is not this Court's function to substitute its discretion for that of the trial court. We have a duty to scrutinize the manner in which the decision of the trial court was made and determine if the judge acted arbitrarily. Here, in a trial which lasted five days, the District Court heard testimony from thirteen witnesses amounting to over 400 pages of transcript and admitted over thirty-five exhibits into evidence. The court then arrived at a conclusion that the County Commissioners abused their discretion when they failed to perform a legal duty of funding the County Auditor enabling her to carry on examinations of books and records, including audits, in accordance with her statutory duties. It is very clear that the trial court did not abuse its discretion in concluding the Commission's budgetary decision was prejudicial, exceeding the bounds of reason, and was such an abuse of discretion as to amount to no discretion at all.

The trial court's mandate in no way usurped or interfered with the Commission's budgetary power. The court gave the

Commission an option to either accept the Auditor's requested budget for auditing functions or to hold further hearings and thereafter reasonably provide funds to allow their performance.

In my opinion, the trial court did not abuse its discretion. Therefore, it must next be determined if the County Commission's failure to fund the Auditor's office, as requested, was a failure to perform a clear legal duty and such an abuse of discretion as to amount to no exercise of discretion at all.

In determining if the Commissioners were under a legal duty to act, the following statutes must be considered:

> "7-6-2315. Consideration of tabulation by county commissioners -- preparation of preliminary budget. (1) The tabulation shall be submitted to the county commissioners by the county clerk and recorder on or before the first Monday of July.

> "(2) Upon receipt thereof, the board of county commissioners shall immediately consider the budget in detail and shall, on or before the second Monday of July, make any revisions, reductions, additions, or changes that they consider advisable. The tabulation, with any revisions, reductions, additions, or changes, is the preliminary budget for the fiscal year which it is intended to cover.

> "(3) Upon completion of the budget the county clerk shall immediately transmit one copy of it to the department of community affairs and one copy to the department of revenue."

> "7-4-2110. Supervision of county and other officers. The board of county commissioners has jurisdiction and power, under such limitations and restrictions as are prescribed by law, to:

> "(1) supervise the official conduct of all county officers and officers of all districts and other subdivisions of the county charged with assessing, collecting, safekeeping, management, or disbursement of the public revenues;

> "(2) see that they faithfully perform their duties;

> "(3) direct prosecutions for delinquencies; and

> "(4) when necessary, require them to renew their official bonds, make reports, and present their books and accounts for inspection."

It is clear that the above statutes impose a duty upon the Commissioners to formulate a budget in such a manner as to enable county officers to faithfully perform their jobs. Although discretionary the duty may be, it nevertheless is a duty.

A case factually similar to the one at hand was decided in the State of Washington and has been given recent accord. State ex rel Yeargin v. Maschke (1916), 90 Wash. 249, 155 P. 1064; accord, Leonard v. Civil Service Commission (1980), 25 Wash.App. 691, 611 P.2d 1290; State v. Pettitt (1980), 93 Wash.2d 288, 609 P.2d ~~932~~ 1364; Murphy v. Grand County (1954), 1 Utah2d 412, 268 P.2d 677. In Yeargin the court stated:

> ". . . The general rule, of course, is that the discretionary power of the board of county commissioners is not subject to review by the court. But this is not a universal rule. If the action of the board of county commissioners is arbitrary or capricious, or if its action is prompted by wrong motives, there is not only an abuse of discretion, but in contemplation of law there has been no exercise of discretionary power. If an honest discretion, as demanded by the law, has not been exercised, the result is to substitute arbitrary action for such discretion. If a tribunal such as the board of county commissioners acts arbitrarily, or refuses to exercise its discretion, the law will by mandamus require it to exercise its discretionary power. [Citations omitted.]

> "In [State ex rel. Brown v. Board of Dental Ex., 38 Wash. 325, 80 P. 544], after stating the general rule that the discretionary power of such tribunal is not subject to review by the court, it is said:

> "'But, notwithstanding this, it is equally well established that courts will compel by mandamus the honest performance of official duty, and if, under pretense of exercising discretion, the power is exercised with manifest injustice or is grossly abused, or duty is avoided, the courts will grant relief. The action of the court must, in reality, be based upon the assumption that the inferior tribunal has refused to exercise the discretion with which it is clothed; because, if it acts arbitrarily or fraudulently, or through unworthy or selfish motives, or conspires against the rights of

-13-

individuals, under the law, and therefore against the law itself, it has not strictly, as is frequently said, "abused its discretion"--a term which is responsible for some confusion of ideas on this subject--but in contemplation of law, it has not exercised its discretion at all, but has sought to substitute arbitrary and fraudulent disposition and determination of the question submitted for the honest discretion demanded by the law. In such cases the law will, by mandamus, compel the tribunal to act honestly and fairly, or, in other words, to exercise its discretion; and, when this distinction is kept in mind, the seeming difficulties which have surrounded this question, and which have caused so much discussion, disappear.'" 155 P. at 1065.

The record here is replete with evidence that the budget cuts were motivated by punitive retaliation, rather than by bureaucratic efficiency. The elected auditor who preceded Linda Reep in office testified that the examinations conducted by her office revealed facts about data processing that were potentially embarrassing to some segments of county government. During the budget discussions conducted in the summer of 1978, one of the County Commissioners told the Auditor and her Chief Deputy (Linda Reep) that he had heard complaints from some departments about these audits. The Commissioner told them that he wanted them to "back off," leaving them with the clear impression that if they did not reduce the scope of their audits, their budget would suffer the next year.

Late in 1978 or early in 1979, the Auditor's office conducted an examination of the county's rural special improvement district program which found several significant shortcomings in the financial accountability of the program. This audit report made at least one Commissioner "very angry," as another Commissioner testified that she believed he said that "it would be better" if the employee who prepared the audit report "wasn't on the county payroll."

-14-

Shortly after this audit report was released, the administrative assistant to the County Commissioners went to Linda Reep's office to question her about the audit. According to Reep's testimony, as the administrative assistant left her office he said he had just come to warn her that "the buffalo were coming before I heard their footsteps." In the context of the conversation, the Auditor inferred that "I was going to be having problems down the line when budget time came."

When the time came for the Commissioners to take action on the budget request, one Commissioner suggested that the Auditor's staff be reduced to two fulltime employees. The Commissioners did not vote to cut the Auditor's staff at that time, but at the next budget meeting they voted to cut two fulltime employees from the Auditor's budget.

Another Commissioner testified that in the process of making these cuts, a fellow Commissioner "said something to the effect that if she [Linda Reep] had time to do these political hatchet jobs that maybe she didn't need the amount of help she had." That same Commissioner testified that he said at the time, "Well, one thing about it . . . at least she's not going to have so much time to hassle people."

Following this vote, the Commissioners sent the Auditor a written directive to reduce staff by two fulltime employees, effective with the beginning of the following pay period. The Auditor was to notify the people being terminated within one day of the receipt of the directive. In sending this directive, the Commissioners "desired immediate action."

Shortly after the Auditor's visit with the County Attorney, the latter's office informed the Commissioners that, in the event of litigation, the court would probably require the

Commissioners to provide the Auditor with a deputy. The Commissioners thereupon informed the Auditor on July 16, 1979, that the position of deputy auditor would be restored but that additional duties might be assigned to the Auditor's office. The next day, the Commissioners directed the Auditor to assume complete responsibility for the county payroll system, effective August 5, 1979.

Approximately $15,000 was budgeted for independent audit services in the event that the Auditor could not perform her duties with the staff provided. That money was budgeted in the general governmental account, which has always been subject to the control of the Commissioners and never subject to the control of the Auditor.

Based on the foregoing, I believe it is evident that the budgetary process was vindictive in nature. It is this Court's duty to find that official government action prompted by the wrong motives is such an abuse of discretion as to amount to no discretion at all, and, therefore, mandamus will lie to compel the proper exercise of powers granted. More importantly, government officials should be precluded from acting through selfish motives or conspiring against the rights of individuals, under the law, and, therefore, against the law itself. These are the very types of actions to which the term "abuse of discretion" is directed and, thus, must be thwarted at their source, the decisionmakers.

I would affirm the judgment of the District Court.

_Gene B. Daly_
Justice

-16-