[No. 12811.   Department Two.   March 15, 1916.]

THE STATE OF WASHINGTON, *on the Relation of D. W. Yeargin, Appellant*, v. A. MASCHKE *et al.*, *Respondents*.[1]

APPEAL — DECISIONS APPEALABLE — INFERIOR TRIBUNAL — COUNTY COMMISSIONERS — ORDER FIXING SALARY — DISCRETION.   Rem. & Bal. Code, § 3909, which provides for appeals from a decision or order of the board of county commissioners to the superior court, is limited to cases requiring the exercise of purely judicial power; and hence has no application to, and no appeal lies from, an order fixing the salary of a court commissioner, under Id., §§ 83, 85, and 87, authorizing the appointment by the superior court of court commissioners, defining their power as that of a judge, and conferring on the county commissioners the right to fix the salary.

MANDAMUS—ADEQUACY OF REMEDY BY APPEAL.   An order of the county commissioners fixing the salary of a court commissioner, involves the exercise of discretion which is unassailable unless arbitrary or capricious, which fact cannot be determined by review of the record; hence the remedy by appeal is inadequate and mandamus lies.

MANDAMUS — ADEQUACY OF REMEDY BY CERTIORARI — DISCRETION— REVIEW—TRIAL DE NOVO.   There is no right to trial *de novo* upon a

[1]Reported in 155 Pac. 1064.

review by writ of certiorari, and the remedy is inadequate to review an order of the county commissioners fixing the salary of a court commissioner, involving discretion; since, whether the order was arbitrary or capricious, can be determined only by trial *de novo*, and not by review of the record.

SAME—WHEN LIES—TO BOARDS—COUNTY COMMISSIONERS — DISCRETION—ARBITRARY ACTION. Where the board of county commissioners acts arbitrarily or refuses to exercise its discretion in fixing the salary of a court commissioner, mandamus will lie to require it to exercise its discretion.

SAME — TO BOARDS — COUNTY COMMISSIONERS — FIXING SALARY— FAILURE TO EXERCISE DISCRETION—ABUSE — EVIDENCE — SUFFICIENCY. The action of the board of county commissioners in reducing the salary of a court commissioner from $15 to $1 a month, will be set aside as arbitrary and without the exercise of a proper discretion, where it appears that two members of the board were actuated by a personal or political enmity, had no knowledge of the scope of the powers or nature or extent of the duties of the office, and made no investigation of the records or inquiry of the judge making the appointment as to the amount of work, which had increased during the preceding years, and there was no presiding judge residing in the county.

Appeal from a judgment of the superior court for Ferry county, G. V. Alexander, Esq., judge *pro tempore*, entered February 27, 1915, dismissing mandamus proceedings, after a trial to the court on the merits. Reversed.

*Porter & Porter*, for appellant.

*Charles P. Bennett*, for respondents.

MAIN, J.—The purpose of this action was to secure a writ of mandamus directed to the board of county commissioners of Ferry county for the purpose of compelling such board to vacate and rescind an order entered by it on April 12, 1913, by which it fixed the salary of the court commissioner of that county at $1 per month. On September 6, 1910, the relator was appointed court commissioner for Ferry county, and served as such continuously up to the time of the trial of this action. On January 6, 1910, the commissioners had fixed the salary of the court commissioner at $15 per month.

It remained at this sum until the order of April 12, 1913, was entered. Subsequent to the time when the salary was reduced to $1 per month, the relator refused to accept the salary, and demanded a salary of $15 per month, claiming that the board in reducing the salary acted arbitrarily and capriciously, and was actuated by improper motives.

After the issues in the case were framed, the cause was tried to the court without a jury, and resulted in a judgment dismissing the action. From this judgment, the appeal is prosecuted.

The record presents three questions: First, Did the relator have a remedy by appeal from the action of the board of county commissioners to the superior court? Second, Did the relator have a remedy by certiorari to review the action of the board of county commissioners? And third, If there was no adequate remedy by appeal or certiorari, will mandamus lie to compel the rescission of an order which was arbitrarily entered?

I. The right to appoint a court commissioner is derived from art. 4, § 23, of the constitution. This section provides that such commissioner shall perform like duties as a judge of the superior court at chambers, and perform such other duties connected with the administration of justice as may be prescribed by law. Section 83, Rem. & Bal. Code (P. C. 131 § 1) provides that the judge of the superior court having jurisdiction in the particular county may appoint a court commissioner for that county. By § 85 (P. C. 131 § 3) the power, authority, and jurisdiction of court commissioners are defined. By § 87 (P. C. 131 § 7) it is provided that every court commissioner shall be allowed a salary in addition to the fees provided for, in such sum as the board of county commissioners may designate. In this statute, which provides for the appointment, defines the authority and jurisdiction, and confers upon the board of county commissioners the right to fix the salary of the court commissioner, there is no provision for an appeal from the order of the board fixing the

salary. If the right of appeal exists, it is by virtue of Rem. & Bal. Code, § 3909 (P. C. 115 § 223), which is a general statute providing for appeals from a decision or order of the board of county commissioners to the superior court of the proper county.

In *Selde v. Lincoln County*, 25 Wash. 198, 65 Pac. 192, construing this statute giving the right of appeal, it was held that appeals from the board of county commissioners to the superior court "must be limited to such cases as require the exercise of purely judicial power, and, therefore, when the board of county commissioners exercises political power, or legislative power, or administrative power, or discretionary power, or purely ministerial power, no appeal involving a trial *de novo* will lie." It is obvious that the statute giving the board of county commissioners power to fix the salary of the court commissioner confers upon such board discretionary power. If the action of the board of county commissioners was arbitrary or capricious, this fact can only be determined by a trial *de novo* in the superior court. In no other way could the facts which show such arbitrary or capricious conduct, if in fact it existed, be made to appear. These facts were what produced the action of the board, and would not be shown by the record of the proceedings of such board. There being no right to a trial *de novo*, under the holding in the *Selde* case, there was no appeal from the action of the board which would afford an adequate remedy.

II. A writ of certiorari may be issued in cases where there is no plain, speedy, and adequate remedy in the ordinary course of law. Rem. & Bal. Code, § 1002 (P. C. 81 § 1729). Had, then, the relator a remedy by certiorari? In that proceeding there can be no trial *de novo* in the reviewing court unless such a trial is authorized by statute. 6 Cyc. 833; Bailey, Habeas Corpus, p. 737; Harris, Certiorari, p. 65; *Los Angeles v. Young*, 118 Cal. 295, 50 Pac. 534, 62 Am. St. 234; *Commissioners of Mason & Tazewell Special Drainage Dist. v. Griffin*, 134 Ill. 330, 25 N. E. 995;

*State ex rel. Spokane & Inland Empire R. Co. v. State Board of Equalization,* 75 Wash. 90, 134 Pac. 695.

No statute in this state has been called to our attention which gives the right to a trial *de novo* when there is a review by certiorari. As already stated, anything short of a trial *de novo* in the superior court would be unavailing to the relator, because he could not otherwise show that the action of the county commissioners was arbitrary or capricious. The writ of certiorari, if issued, would bring before the superior court for review simply the record made by the county commissioners, and the facts or motives which actuated the commissioners would not be shown by the record, and could not be shown in the superior court without a trial *de novo.* Certiorari would not be an adequate remedy.

III.   If the relator had no adequate remedy by appeal, or by a writ of certiorari, the question then arises whether mandamus will lie to compel a rescission of the order of April 12, 1913, if in entering that order the commissioners did not exercise an honest discretion, but acted arbitrarily. The general rule, of course, is that the discretionary power of the board of county commissioners is not subject to review by the court. But this is not a universal rule. If the action of the board of county commissioners is arbitrary or capricious, or if its action is prompted by wrong motives, there is not only an abuse of discretion, but, in contemplation of law, there has been no exercise of the discretionary power. If an honest discretion, as demanded by the law, has not been exercised, the result is to substitute arbitrary action for such discretion. If a tribunal such as the board of county commissioners acts arbitrarily, or refuses to exercise its discretion, the law will by mandamus require it to exercise its discretionary power. 26 Cyc. 161; *State ex rel. Brown v. Board of Dental Examiners,* 38 Wash. 325, 80 Pac. 544; *State ex rel. Kelleher v. Board of President & Directors of St. Louis Public Schools,* 134 Mo. 296, 35 S. W. 617, 56 Am. St. 503; *Illinois State Board of Dental Examiners v.*

*People ex rel. Cooper*, 123 Ill. 227, 13 N. E. 201; *Wood v. Strother*, 76 Cal. 545, 18 Pac. 766, 9 Am. St. 249.

In the case first cited, after stating the general rule that the discretionary power of such tribunal is not subject to review by the court, it is said:

"But, notwithstanding this, it is equally well established that courts will compel by mandamus the honest performance of official duty, and if, under pretense of exercising discretion, the power is exercised with manifest injustice or is grossly abused, or duty is avoided, the courts will grant relief. The action of the court must, in reality, be based upon the assumption that the inferior tribunal has refused to exercise the discretion with which it is clothed; because, if it acts arbitrarily or fraudulently, or through unworthy or selfish motives, or conspires against the rights of individuals, under the law, and therefore against the law itself, it has not strictly, as is frequently said, 'abused its discretion'—a term which is responsible for some confusion of ideas on this subject—but in contemplation of law, it has not exercised its discretion at all, but has sought to substitute arbitrary and fraudulent disposition and determination of the question submitted, for the honest discretion demanded by the law. In such cases the law will, by mandamus, compel the tribunal to act honestly and fairly, or, in other words, to *exercise its discretion;* and, when this distinction is kept in mind, the seeming difficulties which have surrounded this question, and which have caused so much discussion, disappear."

If the court has the power to compel the board to exercise its discretion, it would seem reasonably to follow that it has the power to vacate and annul the order of such board which is not the result of the exercise of an honest discretion, but is an arbitrary and capricious action.

It remains to inquire whether the board in fixing the salary of the court commissioner at $1 per month exercised an honest discretion, or acted arbitrarily or from improper motives, and thus failed to exercise that discretion which the law demands. The action of the board in reducing the salary was supported by two of the commissioners, and opposed by one. The two commissioners who favored the re-

duction of the salary had been elected to the board at the previous November election.  Their election was opposed by the relator in this case, who supported the rival candidates. A careful reading of the record leads to the conclusion that the action of the majority of the board of county commissioners was prompted by a desire to oust the relator from the office of court commissioner because of either personal or political enmity which they entertained towards him.

The two commissioners who favored a reduction of the salary, testifying in their own behalf, stated that they had inquired around and made investigation prior to the time they took action reducing the salary; but neither of them made any investigation of the records in the office of the clerk of the superior court for the purpose of determining the amount of work which the court commissioner had done. One of these county commissioners testified that, in his investigation, he found that all the court commissioner had to do was to sign "his name to papers which were prepared by attorneys; that is the principal part of it; that is what I found out."  No inquiry appears to have been made of the judge of the superior court whose appointee the court commissioner was.

One of the commissioners, prior to the time this action was instituted, stated to one of the attorneys for the relator that if he brought suit he might as well quit Republic, as he would thereafter get no business along his lines in that town.

In January preceding the time when the action was taken reducing the court commissioner's salary, the county had been advanced from the twenty-second class to a county of the twentieth class.  During the few years next preceding the action of the board which is involved in this controversy, the work of the court commissioner had materially increased. There was no judge of the superior court who resided in that county.

The members of the board of county commissioners who favored the reduction of salary apparently had no knowledge

of the scope of the power exercised by the court commissioner, nor the nature or extent of his duties. They had no knowledge of the amount of work that he actually did. They did not know that the work of the office had increased during the few years preceding. They seem to have been actuated by one motive, and that was to so reduce the salary as to force the resignation of the relator from that office. This was a gross abuse of discretion; or, as stated in the authorities, was the failure to exercise that discretionary power which the law imposed upon the board of county commissioners. If the board of county commissioners, by reduction of the salary of court commissioner, can force the vacation of that office, which, under the statute, the judge of the superior court has the right to fill, it in a measure takes from the judge of the superior court the power of appointment and vests it in the board of county commissioners.

The conclusion reached in this case is in no way in conflict with the case of *Dillon v. Whatcom County*, 12 Wash. 391, 41 Pac. 174. In that case, the question of arbitrary conduct or abuse of discretion on the part of the board of county commissioners was not involved.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment directing that a writ of mandamus issue to the board of county commissioners commanding them to vacate and rescind the order entered on April 12, 1913, by which the salary of the court commissioner of Ferry county was reduced to $1 per month.

MORRIS, C. J., PARKER, HOLCOMB, and BAUSMAN, JJ., concur.