[No. 40232.    Department One.    May 8, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL A. BARTON, *Appellant.**

*Reported in 454 P.2d 381.

*Sam Peach,* for appellant.

*Stan Pitkin* and *William A. Gardiner,* for respondent.

FINLEY, J.—In this case, Daniel Barton defendant was convicted by a superior court jury on a charge of negligent homicide. The trial judge imposed the statutorily prescribed maximum sentence of 20 years with the period of incarceration to be fixed by the parole board under our indeterminate sentence law. Defendant Barton has appealed, asserting error as to both conviction and sentence as imposed by the trial court.

Daniel Barton closed his father's gasoline service station in Bellingham at approximately 10 p.m. Wednesday evening, April 6, 1966. Joined by his friends Mike Chevalier, Barton drove his modified 1957 Chevrolet sedan home, cleaned up, changed clothes, and accompanied by his friend drove downtown into Bellingham. The two decided to go to Ferndale to a dance. They arrived at approximately 11:45 p.m.—about 45 minutes before the end of the dance. Barton had a six pack of beer with "two bottles out" in his car. He had a bottle of beer and offered one to Mike. Upon leaving the dance about 5 minutes to midnight, Barton commenced driving south toward Bellingham on the freeway at 70 to 75 miles per hour. En route he passed several cars, including one driven by Fred Rood traveling between 75 and 80 miles per hour. Barton then rear-ended a 1965 Triumph motorcycle. A passenger on the motorcycle was severely injured and very shortly died. Barton claimed that the motorcycle had no lights and when first seen by him, it was too late to avoid the accident. Officer Thomas of the Washington State Patrol testified that just prior to the accident he had been watching traffic on the freeway at a place north of the accident scene and, among other vehi-

cles, had seen a motorcycle heading south with both its headlight and taillight operating. After· the accident, Officer Thomas drove Barton and Chevalier to the. Bellingham police station where Barton was interviewed by Officer Thomas and Sergeant Dunn ,of the Bellingham Police Department. Officer Thomas explained to Barton his constitutional right to counsel and to refuse any and all tests; and that anything he said might be used against him in a court of law. Officer Thomas asked Barton to perform simple physical tests as to sobriety. Barton refused, stating he had drunk no intoxicants, and he would first have to talk to his father or his father's lawyer. When Barton's father arrived, the officers advised Barton·and his father that the motorcycle passenger· had died. The officers discussed sobriety tests and requested the father's permission to administer these. Barton told ·his father he had drunk nothing. The father stated "take the test then." The breathalyzer test was administered and Barton was taken to the hospital.

At a pretrial hearing on defense motions to suppress evidence, the trial court ruled out the breathalyzer test and statements made by Barton at the Bellingham police station. The latter ruling was on the ground that Barton had ·not been accorded full *Miranda* warnings.

During ·the course of the trial Officer Thomas testified that he had observed Barton at the police station and described what he had ·observed.· At one point in the trial, ·the prosecuting attorney asked to see the breathalyzer report and had the report in his possession momentarily.

■ Three claims of error are asserted in behalf of appellant Daniel Barton. It is argued that the trial judge's pretrial order was sufficiently broad to exclude Officer Thomas's testimony that he· had observed Barton at the police station and what he saw. We do not agree. The pretrial order excluded the breathalyzer test and statements made at the police station by Barton. Neither the breathalyzer test nor the statements by Barton were admitted in evidence. Officer Thomas testified only as to his observation of Barton and what he saw. This testimony was not excluded

by the pretrial order of the trial judge. It was not banned or excluded by any lack of appropriate Miranda warnings. *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966).

■ It is urged that the prosecutor's reference to and his physically acquiring possession of the breathalyzer report during the course of the trial was error. The record is quite clear that the prosecutor's statement and his actions in this connection did not come to the attention of the jury. Consequently, there was no prejudice in this respect, and this claim of error is without merit.

■ Finally, the defense asserts error in the nature of a denial of equal protection in the application of the statute setting the maximum sentence. The trial judge had a choice of imposing a sentence of 1 year in the county jail or the statutory maximum of 20 years in the state penitentiary—the actual time to be served to be fixed by the State Parole Board under our indeterminate sentence statutes. The defense argues that this choice was inimical to the rights of the defendant in that the choice amounted to denial of equal protection. The defense might also have added that the trial judge had a choice of deferring sentence or imposing and suspending sentence and granting probation and that this authority results in a denial of equal protection in that some defendants are granted probation while others are not. We find no merit in this assignment of error. The judgment and sentence should be affirmed. It is so ordered.

HUNTER, C. J., HAMILTON and McGOVERN, JJ., and COLE, J. Pro Tem., concur.

---

July 10, 1969. Petition for rehearing denied.