[No. 1961-1.    Division One.    December 28, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. VERNER LYNN NIXON, *Appellant*.

*Snure & Gorham* and *James B. Gorham,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael P. Ruark, Deputy,* for respondent.

CALLOW, J.—The defendant was charged with being an

habitual criminal. Following a nonjury trial, findings of fact and conclusions of law were entered adjudicating the defendant to be an habitual criminal.

The defendant states that the prosecuting attorney in King County has charged individuals whose records indicated two or more prior felony convictions with a further felony and then has not charged these persons with being an habitual criminal pursuant to RCW 9.92.090. The defendant alleges further that the prosecutor in King County has a system for screening individuals charged with at least a third felony for the purpose of selecting those individuals against whom the habitual criminal information would be filed. He alleges that in certain instances individuals with four or five prior felony convictions have been sentenced on a later felony conviction and an habitual criminal information has not been filed subsequently.

The prosecutor concedes there have been persons with criminal records for two or more prior felony convictions who have not been charged as an habitual criminal. The prosecutor further alleges that there is in effect in the King County Prosecutor's Office a procedure for screening individuals charged with a third felony for the purpose of selecting those individuals against whom the habitual criminal information should be filed. Charges involving defendants whose criminal records indicate they would meet the King County prosecutor's criteria for habitual criminal status have been assigned to deputies whose responsibility it is to determine whether the defendants were represented by counsel at the time of their prior convictions, the amount of time between those convictions, the nature and facts of the previous convictions, the availability of the necessary documents and the means for establishing the identity of the defendant as the person who committed the previous crimes. The deputy to whom the prosecution of the candidate for habitual criminal status has been assigned also prepares a resumé of the pending charge and determines if possible, the extent of the defendant's criminal activity in the area.

This information is presented to a supervisors' meeting which determines whether an habitual criminal charge will be filed. The supervisors consider whether the habitual criminal status can be established, the severity of the present offense charged, the severity of past offenses and the frequency of offenses. In addition, consideration is given to the appropriate punishment, the opportunity for and possibility of rehabilitation and the potential danger of the defendant to the community.

Defendant claims that the habitual criminal statute is selectively enforced, that selective enforcement violates that statute, RCW 9.92.090, and that selective enforcement violates due process and the equal protection of the law.

■■ A purpose of the privileges and immunities clause of article 1, section 12 of the Washington State Constitution and of the equal protection clause of the fourteenth amendment to the United States Constitution is to secure equality of treatment to all persons without undue favor on the one hand or discrimination on the other. Statutes may not grant to any citizen or class of citizens privileges or immunities which do not belong equally to all citizens upon the same terms. *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). The achievement of equal treatment requires that legislation apply alike to all persons within a class and that reasonable grounds exist for distinguishing between those within and without a designated class. *Faxe v. Grandview,* 48 Wn.2d 342, 294 P.2d 402 (1956); *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P.2d 1101 (1936). These constitutional clauses have been held to be substantially identical. Consequently, the decisions and interpretations of the United States Supreme Court and the Washington State Supreme Court are to be read together, similarly construed and reconciled subject to the supremacy of the decisions of the United States Supreme Court. *Texas Co. v. Cohn,* 8 Wn.2d 360, 112 P.2d 522 (1941).

Every denial of a right conferred by state law does not necessarily involve a denial of the equal protection of the

laws. The administration by state officers of a state statute which is fair on its face but which results in an unequal application of the law to citizens is not a denial of equal protection unless there is shown to be present an element of intentional or purposeful discrimination. A discriminatory purpose must be shown clearly by one claiming discrimination since such a purpose cannot be presumed. *Snowden v. Hughes,* 321 U.S. 1, 88 L. Ed. 497, 64 S. Ct. 397 (1944). *See also Yick Wo v. Hopkins, supra.*

■ A prosecutor need not prosecute all possible violators of the law in order for a statute to be constitutional. In *State v. Jacobsen,* 78 Wn.2d 491, 477 P.2d 1 (1970), the contention was made that the defendant was denied the equal protection of the law because the prosecutor did not proceed against others claimed to be equally guilty. The court pointed out that there was not an assertion or any proof offered that the prosecutor's conduct was without reasonable justification or constituted an intentional or purposeful discrimination in the enforcement of the law. Prosecutors in each county under the Washington state system may elect whether or not to prosecute, may decide about the existence of probable cause or submit the decision to a justice of the peace, and may ask for one punishment or for another. The state and federal protections do not dictate that every person charged with a crime be treated exactly the same as every other person charged with the same crime. *State v. Kanistanaux,* 68 Wn.2d 652, 414 P.2d 784 (1966).

A statute may provide for alternative punishments and not violate the clauses of the state and federal constitutions calling for equal treatment. *State v. Saylors,* 70 Wn.2d 7, 422 P.2d 477 (1966). Likewise, the application of a statute which grants to a trial judge a discretion within prescribed limits as to the duration of sentence or the place of incarceration is not a denial of equal protection. *State v. Barton,* 75 Wn.2d 947, 454 P.2d 381 (1969); *State v. Pitts,* 3 Wn. App. 748, 477 P.2d 642 (1970).

RCW 9.92.090 defines the status of being an habitual criminal. *State v. Tatum*, 61 Wn.2d 576, 379 P.2d 372 (1963). Having denominated the attainment of being an habitual criminal as a status rather than as a crime in itself, the law gives the prosecuting attorney power to elect to charge or not to charge an individual with having reached the status. *State v. Kanistanaux, supra; Frye v. Delmore*, 47 Wn.2d 605, 288 P.2d 850 (1955); *State v. West*, 197 Wash. 595, 86 P.2d 192 (1939). The punishment inflicted upon one found to be an habitual criminal is not a double punishment but rather the imposition of an additional sentence. The commission of crime by one who has acquired the status was said to be indicated because the habitual criminal was more deserving of additional punishment. *State v. Miles*, 34 Wn.2d 55, 207 P.2d 1209 (1949). Punishment for its own sake does not find the support today that existed in years past, but the removal of the habitual criminal from the society he threatens, for the safety of that society, affords a preferable justification.

Neither the discretionary power given to a prosecutor to charge or not charge a defendant with being an habitual criminal nor the exercise of that power is a denial of due process or of the equal protection of the laws. *Poe v. State*, 251 Ark. 35, 470 S.W.2d 818 (1971); *State v. West, supra*. The safeguards of the due process and equal protection clauses overlay one another, but their areas of security do not have the same boundaries. The due process clause secures equality in providing a required minimum of protection for everyone's right of life, liberty and property while the guarantee of equal protection proscribes undue favor and individual or class privilege on the one hand and forbids hostile discrimination and the oppression of the individual on the other. *Truax v. Corrigan*, 257 U.S. 312, 66 L. Ed. 254, 42 S. Ct. 124, 27 A.L.R. 375 (1921). In *Poe v. State*, it was pointed out that the act involved did not discriminate among defendants and was therefore invulnerable to attacks from that standpoint. Further in that case, the record did not disclose that the prosecuting attorney was act-

ing arbitrarily, capriciously, or willfully discriminating against any particular person or any particular class of which the defendant was a member. Laxity in enforcement even though without apparent excuse was held to be insufficient to render application of such a statute to an individual a denial of equal protection or of due process in the absence of any showing of arbitrary or capricious action or of a willful intention to discriminate. *See also State v. Hicks,* 213 Ore. 619, 325 P.2d 794 (1958). Parenthetically, we find present here no laxity in enforcement but rather an objective approach consistent with pragmatic and due process values.

The habitual criminal statute of West Virginia was challenged in *Oyler v. Boles,* 368 U.S. 448, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962), on the ground that the act had been applied only to a minority of those subject to its provisions and as such, the application was a violation of the due process and equal protection clauses of the Fourteenth Amendment. The court answering this charge stated at page 456:

> [T]he allegations set out no more than a failure to prosecute others because of a lack of knowledge of their prior offenses. This does not deny equal protection due petitioners under the Fourteenth Amendment. See *Sanders v. Waters,* 199 F.2d 317 (C.A. 10th Cir. 1952); *Oregon v. Hicks,* 213 Ore. 619, 325 P.2d 794 (1958).
>
> Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged. *Oregon v. Hicks, supra;* cf. *Snowden v. Hughes,* 321 U. S. 1 (1944); *Yick Wo v. Hopkins,* 118 U. S. 356 (1886) (by implication).

*See also Spencer v. Texas,* 385 U.S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648 (1967); *Carlesi v. New York,* 233 U.S. 51, 58 L. Ed. 843, 34 S. Ct. 576 (1914); *Graham v. West Virginia,* 224 U.S. 616, 56 L. Ed. 917, 32 S. Ct. 583 (1912); *Ughbanks v.*

*Armstrong,* 208 U.S. 481, 52 L. Ed. 582, 28 S. Ct. 372 (1908); *McDonald v. Massachusetts,* 180 U.S. 311, 45 L. Ed. 542, 21 S. Ct. 389 (1901).

The judgment is affirmed.

SWANSON, C.J., and HOROWITZ, J., concur.

Petition for rehearing denied March 19, 1974.

Review denied by Supreme Court June 17, 1974.