[No. 3076–2.   Division Two.   February 16, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. MICHAEL R. WORTHEY, *Respondent.*

*Jeremy R. Randolph, Prosecuting Attorney,* for appellant.

*David R. Draper,* for respondent (appointed counsel for appeal).

PETRIE, J.—After a jury returned a verdict of guilty in Michael R. Worthey's trial for the crime of felony escape, the prosecutor for Lewis County filed an information, pursuant to the second unnumbered paragraph of RCW 9.92-.090, seeking enhancement of Worthey's punishment to life imprisonment as a habitual criminal.[1] Worthey moved to

---

[1]The second unnumbered paragraph of RCW 9.92.090 provides:

"Every person convicted in this state of any crime of which fraud or intent to

dismiss the supplemental information, and the court granted the motion under authority of CrR 8.3(b). The State of Washington has appealed to this court. We reverse the order of dismissal.

At the conclusion of the hearing on defendant's motion, the court orally expressed the view that the prosecutor's use of RCW 9.92.090 in this case was arbitrary. Thereafter, the prosecutor filed a motion to reconsider and supported the motion with his affidavit. Following argument on that motion, the court reiterated its determination that the filing of the supplemental information in the case at bench did constitute arbitrary action by the prosecutor. Thereupon, the court signed the dismissal order which set forth 11 reasons for the court's action.

The first two reasons describe the present crime and the several prior convictions as follows:

1. The defendant's current offense, for which a jury has returned a verdict of guilty, is felony escape. In brief, the circumstances of the current offense were that the defendant was being held on a felony charge and, while being escorted from the courtroom back to the county jail after a pretrial hearing, ran out of the courthouse and a short time later was captured a few blocks away hiding under a church stairway. The escape was not effected through the use of any force or violence but occurred when the deputy sheriff momentarily left the defendant unguarded.

2. The defendant's prior convictions were automobile theft committed at age 16, grand larceny committed at age 17, and escape (from the Shelton Corrections Center) committed at age 17. So far as the testimony indicates, none of these prior offenses involved the use of a deadly weapon or endangered anyone's life or health.

defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

The prosecution does not seriously challenge those two statements. However, the prosecutor does point out that the record reveals Mr. Worthey's theft of an automobile at age 16 occurred when he ran away from a juvenile detention facility after having tied up a detention officer. The record also indicates that the grand larceny charge at age 17 included the theft of several guns, although it does not appear that Worthey ever used or attempted to use those weapons. The facts involved in the escape from Shelton Corrections Center are set forth in *State v. Keith*, 13 Wn. App. 127, 534 P.2d 128, *aff'd*, 86 Wn.2d 229, 543 P.2d 235 (1975).

The next four reasons express the trial court's interpretation of those portions of the record which reflect upon Mr. Worthey's potential risk for rehabilitation, the severity of the prior convictions, the extent of danger to the community, and the prosecutor's evaluation of those factors. The court expressed itself as follows:

3. The defendant is 20 years of age and although his past record is not good he probably would be classified as having a "medium" chance of rehabilitation under the proposed guidelines for the fixing of minimum sentence of the Board of Prison Terms and Paroles. The testimony further was that the defendant demonstrates a significant degree of immaturity which with a reasonable period of incarceration might change, thereby bringing about a corresponding improvement in his chances of rehabilitation.

4. Although the defendant was being held on another felony charge at the time of the commission of his current offense, there was some indication in the prosecutor's testimony that his case as to the felony for which the defendant was being held might not be very strong. At any rate the prosecutor elected to prosecute the escape charge rather than the original felony.

5. The testimony of the prosecuting attorney relative to his past practice of filing habitual criminal informations was that there have been seven cases in the past fifteen months in which a defendant had the prerequisite number of felony convictions for such a charge under

RCW 9.92.090. In only one of such cases did the prosecuting attorney charge the defendant as an habitual criminal and in that instance the defendant had two prior felony convictions for armed robbery.

6. Further, the essence of the prosecutor's testimony was that his reasons for filing under RCW 9.92.090 in this case were that the defendant had the prerequisite number of felony convictions and in the opinion of certain law enforcement personnel the defendant (a) is dangerous and (b). was involved in a series of burglaries prior to his last arrest. Neither (a) nor (b) are supported by evidence. The opinion that defendant is dangerous is not supported by the defendant's past record unless, of course, his attempts to escape establish the defendant to be dangerous.

The prosecution challenges the accuracy of those statements. However, we find substantial evidence in the record to support the essential nature of the trial court's expressions.

A counselor at the Washington State Reformatory, who had previously worked closely with Worthey during his incarceration at that institution, indicated that his parole had been revoked and that, absent the habitual criminal charge, he would probably be incarcerated 3 to 5 years on the latest escape charge because criteria used by the parole board to evaluate rehabilitation potential would place him in the "medium" category.

The prosecutor testified, "[A]lthough he appears to be adult [he] is very child–like and does immature things" and

I would have liked to have gotten to Mike when he was ten years old. The problem of the matter is he is now twenty years old, and you can't turn the clock back.

He also testified that the decision to file the habitual criminal charge was made "completely and totally inexorably after the escape incident." Further, he indicated that he voluntarily dismissed the assault and burglary charges (the charges under which Worthey was being held when he committed the last short–lived escape) and pursued the felony escape charge even though he believed the other charges were valid, albeit "not a 99 percent dead–bang

case." He explained that an "off the cuff remark", apparently to the contrary, was "superfluous."

The prosecutor's review of prior felons who technically qualified under the provisions of RCW 9.92.090 (but against whom he did not seek enhanced punishment) included three whose prior convictions were essentially limited to larcenies (although one also had an arson conviction). He explained that two had alcohol problems and that he had been led to believe that the third one was "penurious at the time" and was "a classic culturally deprived person . . . with no ability, obviously, to even remain gainfully employed . . . whose wife had divorced him . . ." In addition, the prosecutor asserted, "he was suffering from tuberculosis, or something to do with his lungs."

The record indicates that the prosecutor had been advised by law enforcement officials that Worthey had recently been involved in a series of burglaries in Lewis County, some of which also involved assault with weapons. These alleged crimes would certainly indicate that Worthey had degenerated into crimes of violence, but the trial court appears to have given only slight credence to those assertions by the prosecutor, probably because Worthey's connection with those crimes was dependent upon statements made to police investigators by a juvenile who contended he was a co-perpetrator of those crimes.

The remainder of the court's reasons for dismissing the supplemental information express the court's view that the prosecutor failed to measure his decision on a sufficiently objective and comprehensive set of standards, but instead reached his decision based upon "the prosecuting attorney's personal judgment." Accordingly, the court concluded that "the filing of the habitual criminal charge was arbitrary as a matter of law."

Our function here is not limited to simply determining whether or not there is substantial evidence in the record to support the trial court's reasons for dismissal. The issue involves a question of law: whether or not the record reflects that there was arbitrary action of the type

historically regarded as sufficient to support a dismissal of a criminal charge. *State v. Starrish*, 86 Wn.2d 200, 544 P.2d 1 (1975). Nevertheless, it would be imprudent for us to disregard the trial court's resolution of contested factual matters when the trial court has had the benefit of observing the witnesses whose testimony is being evaluated.

Selective application of the enhancement of punishment statute does not, per se, indicate arbitrariness. *State v. Nixon*, 10 Wn. App. 355, 517 P.2d 212 (1973). A prosecuting attorney is afforded wide discretion as to the filing of a supplemental information seeking enhanced punishment. *State v. Clark*, 18 Wn. App. 831, 572 P.2d 734 (1977). Once the charges have been filed, the court cannot rely upon CrR 8.3 to dismiss them "on equitable grounds absent a showing of arbitrary action or governmental misconduct." *State v. Starrish, supra* at 205. A prosecutor's decision to exercise his discretion to file criminal charges can only be said to have been arbitrary when his conduct "was without reasonable justification and constituted intention or purposeful systematic discrimination in the enforcement of the law." *State v. Jacobsen*, 78 Wn.2d 491, 499, 477 P.2d 1 (1970).

The prosecutor obviously concluded that Mr. Worthey's repetition of criminal conduct aggravated his guilt and justified a heavier penalty than would ordinarily apply following his conviction of felony escape. *See State v. Miles*, 34 Wn.2d 55, 207 P.2d 1209 (1949). Quite obviously, perhaps even understandably, the trial court reached a contrary conclusion. Viewing the totality of the circumstances, however, we cannot say that the prosecutor reached his decision "without reasonable justification" and that his decision resulted in "purposeful systematic discrimination in the enforcement of the law."

Judgment reversed with direction to determine factually whether or not the defendant is a habitual criminal as

defined by RCW 9.92.090.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied March 13, 1978.