[No. 3039-2. Division Two. February 21, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. LOWELL THOMAS PETTITT, *Appellant*.

*Searle & Brosey* and *Kenneth G. Johnson,* for appellant (appointed counsel for appeal).

*Jeremy Randolph, Prosecuting Attorney,* for respondent.

PEARSON, C.J.—Lowell Thomas Pettitt was sentenced to life imprisonment for taking a motor vehicle without the owner's permission and for being a habitual criminal. He contends that the State lacked jurisdiction to prosecute him

because he stole the vehicle in Oregon, not Washington, and he protests the length of his sentence as being cruel and unusual punishment. We affirm the conviction and sentence.

The facts are not in dispute. Pettitt, an Oregon resident with four prior felony convictions,[1] stole a van and drove it to Lewis County, Washington, where he was arrested and convicted for taking a motor vehicle without permission, also a felony. RCW 9A.56.070. The prosecutor in Lewis County has an established policy of filing habitual criminal charges against any defendant with three or more prior felonies on his record. RCW 9.92.090.[2] Pursuant to this policy, charges were filed against Pettitt and, upon conviction, he received a mandatory sentence of life imprisonment. Had Pettitt been prosecuted in Oregon, where he stole the vehicle, the maximum penalty would have been 5 years imprisonment. Or. Rev. Stat. 164.135. Oregon would not have applied its habitual criminal statute to this type of offense. Or. Rev. Stat. 161.725, .735.

 Pettitt's first contention is that he should not have been prosecuted in the state of Washington because Washington had no jurisdiction over him. Washington's criminal jurisdiction is defined generally in RCW 9A.04.030. Subsection (1) of that statute states that Washington has jurisdiction over "[a] person who commits in the state any crime, in whole or in part." Our courts have said repeatedly that there are two ways of committing the statutory crime

---

[1]All four convictions were in Oregon: taking motor vehicle without permission (1971); taking motor vehicle without permission (1972); second–degree burglary (1972); unauthorized use of a vehicle (1975).

[2]RCW 9.92.090 states in pertinent part:
"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

of taking a motor vehicle without permission: (1) by intentionally taking or driving away a motor vehicle without permission, or (2) by riding in or upon a motor vehicle with knowledge that the vehicle was unlawfully taken.[3] *See, e.g., State v. McCaskey,* 55 Wn.2d 329, 347 P.2d 895 (1959); *State v. Medley,* 11 Wn. App. 491, 524 P.2d 466 (1974). *See also* WPIC 74.01, 74.02, 74.04. The trial court found that defendant was guilty of committing the crime in Washington by both methods. We may sustain the trial court's decision if defendant could have been found guilty under either one of the methods. *See generally State v. Klinker,* 85 Wn.2d 509, 514 n.4, 537 P.2d 268 (1975).

■ Because we are convinced that Pettitt was amenable to prosecution under the "riding in" portion of the statute, we need not reach the issue of whether the State also had jurisdiction under the "taking or driving away" section. *Cf. State v. Ladely,* 82 Wn.2d 172, 176, 509 P.2d 658 (1973) (implies that "a taking" is not a continuing offense). The "riding in" portion of the statute defines a crime which is continuous in nature, *i.e.,* it is being committed all the while defendant is riding in the car. It is analogous to possession of stolen property, which many courts hold to be a continuing offense. *See, e.g., State v. Pambianchi,* 139 Conn. 543, 95 A.2d 695 (1953). *See also* RCW 9A.04.030(2); W. LaFave & A. Scott, Jr., *Handbook on Criminal Law* § 17 (1972).

■ Pettitt argues, as a matter of statutory interpretation, that he cannot be prosecuted as a "rider" because he

---

[3]RCW 9A.56.070:

"Taking motor vehicle without permission. (1) Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle, whether propelled by steam, electricity, or internal combustion engine, the property of another, shall be deemed guilty of a felony, and every person voluntarily riding in or upon said automobile or motor vehicle with knowledge of the fact that the same was unlawfully taken shall be equally guilty with the person taking or driving said automobile or motor vehicle and shall be deemed guilty of taking a motor vehicle without permission.

"(2) Taking a motor vehicle without permission is a class C felony."

admittedly was the "taker." He contends that the "riding in" prong of the statute is reserved for prosecution of passengers or persons who aid and abet the taker. *See, e.g., State v. McCaskey, supra; State v. Tulley,* 198 Wash. 605, 89 P.2d 517 (1939). We do not read the "riding in" prong of the statute so narrowly. The "riding" prong proscribes a certain activity regardless of whether the person engaged in that activity is a passenger, driver, accomplice, or taker of the vehicle. There are numerous cases upholding convictions based on the "riding in" charge where the defendant was the only person occupying the car, *see State v. Robinson,* 78 Wn.2d 479, 475 P.2d 560 (1970); *State v. Hudson,* 1 Wn. App. 813, 463 P.2d 786 (1970), or where it appeared that he was also the taker. *See State v. Jones,* 65 Wn.2d 449, 397 P.2d 815 (1964); *State v. Hill,* 141 Wash. 273, 251 P. 280 (1926). Thus we hold that a person is liable for riding in a motor vehicle without permission regardless of whether he is the taker as well.

Pettitt's second argument on appeal is that sentencing him to life imprisonment constitutes cruel and unusual punishment. U.S. Const. amend. 8; Const. art. 1, § 14. He recognizes that life imprisonment is not cruel and unusual punishment per se. *State v. LePitre,* 54 Wash. 166, 103 P. 27 (1909). He simply contends that the mandatory provisions of RCW 9.92.090 are unconstitutional as applied to him. In support of his position, he relies on *State v. Lee,* 87 Wn.2d 932, 937, 558 P.2d 236 (1976), wherein our Supreme Court stated that life imprisonment under RCW 9.92.090 may be cruel and unusual if it is "disproportionate to the underlying offense." *See also In re George,* 90 Wn.2d 90, 95, 579 P.2d 354 (1978).

*Lee* upheld the life imprisonment penalty where the underlying conviction was for robbery and defendant had prior convictions for robbery, two second–degree burglaries, and an assault. However, in footnote 4 of the opinion, the court approved of the result in *Hart v. Coiner,* 483 F.2d 136 (4th Cir. 1973), where a federal circuit court invalidated a life imprisonment sentence under West Virginia's habitual

criminal statute. In *Hart,* the underlying conviction was for perjury in 1968 and the prior convictions were for cashing a check without sufficient funds in 1949 and transporting a forged check across state lines in 1955.

Recently a panel of the Fifth Circuit followed *Hart* in striking down a life sentence imposed by a Texas court under its habitual criminal statute. *Rummel v. Estelle,* 568 F.2d 1193 (5th Cir. 1978) (petition for en banc rehearing granted). In *Rummel,* the underlying crime was obtaining $120.75 by false pretenses in 1973; the defendant had previously been convicted of fraudulent use of credit card ($80) in 1964 and passing a forged instrument ($28.36) in 1969.

■ The federal decisions analyze four factors in reaching their result: (1) the nature of the offenses, (2) the legislative purpose behind the habitual criminal statute, (3) the punishment defendant would have received in other jurisdictions, and (4) the punishment meted out for other offenses in the same jurisdiction. *See also State v. Atkinson,* 19 Wn. App. 107, 575 P.2d 240 (1978); *State v. Gibson,* 16 Wn. App. 119, 553 P.2d 131 (1976). But where one or more of the offenses forming the basis for the sentence involves violence or the potential for violence, the analysis needs go no further than the first factor. *Rummel v. Estelle, supra* at 1197–98; *State v. Lee, supra.*

The five felonies committed by Pettitt, including the one for which he was sentenced to life imprisonment, involve violence or potential violence to property and have the potential for violence to persons. We also note that unlike *Hart* and *Rummel,* Pettitt's prior convictions are more numerous than the statutory minimum, and are recent, not remote. Therefore, we hold that RCW 9.92.090 does not violate defendant's constitutional rights in this case.

Defendant also urges that we reverse his sentence on the ground that the prosecutor abused his discretion by filing habitual criminal charges against him. Defendant theorizes that since the prosecutor has discretion *not* to file habitual criminal charges, *see State v. Nixon,* 10 Wn. App. 355, 517

P.2d 212 (1973), he violates that discretion by adopting a policy of uniformly filing habitual criminal charges in every case where there are three or more prior felony convictions. Defendant would require the prosecutor to examine every case individually.

■ No matter whether the prosecutor adopts a policy of universal prosecution or case–by–case determination, arguments of inequity are bound to exist; no procedure will satisfy all defendants. Our courts have left prosecutors free to adopt any procedure so long as they stay within the limits of RCW 9.92.090, due process, and equal protection. *See State v. Cooper*, 20 Wn. App. 659, 583 P.2d 1225 (1978). We hold that Lewis County's policy of universal prosecution of all persons with three or more prior felonies does not transgress any of these limitations.[4] The policy is well within the statutory requirements, and, having decided above that it does not violate the Eighth Amendment, we see no reason it would run afoul of due process limitations. Furthermore, it does not violate equal protection. A prosecutor does not abuse his discretion if he chooses to enforce the law. The issue of abuse of discretion arises only where the prosecutor chooses to file charges against some persons and not against others, and uses an arbitrary standard in classifying the two groups. *State v. Malone*, 20 Wn. App. 712, 582 P.2d 883 (1978). The Lewis County prosecutor files habitual criminal charges against every felon with three prior felony convictions, and depending on the circumstances, may or may not file such charges against a felon with two prior felony convictions. We hold that there is nothing arbitrary or unreasonable in these classifications. Clearly, a person with two prior felonies is less likely to be a recidivist than the person with three prior felonies. Therefore, the prosecutor has good reason to consider mitigating circumstances in the case of the two–time felon, but not in the case of the three–time felon.

---

[4]Testimony by the prosecutor indicates that since 1973 only three persons, including Pettitt, had been prosecutable and were prosecuted under this policy.

696

The judgment and sentence are affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied March 15, 1979.

Review granted by Supreme Court June 1, 1979.