[No. 46201. En Banc. April 17, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. LOWELL
THOMAS PETTITT, *Petitioner.*

*Searle, Brosey & Johnson* and *Kenneth G. Johnson,* for petitioner (appointed counsel for appeal).

*John Panesko, Jr., Prosecuting Attorney,* for respondent.

WILLIAMS, J.—Petitioner Lowell Pettitt seeks review of a decision of the Court of Appeals which affirmed his conviction for taking a motor vehicle without permission in violation of RCW 9A.56.070. Petitioner also challenges his life sentence imposed pursuant to the habitual criminal statute, RCW 9.92.090. We affirm in part and reverse in part.

Petitioner took a van from a Portland, Oregon, parking lot without permission of the owner and drove north into Lewis County, Washington, where he was arrested for driving while under the influence of intoxicants. He was subsequently charged with the offense of taking a motor vehicle without permission and convicted after a trial before the court sitting without a jury.

The State then filed a supplemental sentencing information charging petitioner with being a habitual criminal. The record reveals that at the time petitioner was charged the Lewis County prosecuting attorney had a mandatory policy of filing habitual criminal complaints against all defendants with three or more prior felonies. At a hearing pursuant to petitioner's motion to dismiss the supplemental information, the prosecutor testified that once the prior convictions were clearly established by the record, he had no choice but to file a supplemental information.

Based on its finding that petitioner had three prior felony convictions in the state of Oregon, the trial court refused to grant petitioner's motion to dismiss the supplemental information. The offenses were: taking a motor vehicle without permission (1971); second–degree burglary (1972); and unauthorized use of a vehicle (1975). The court entered judgment declaring petitioner a habitual criminal and sentencing him to life imprisonment. RCW 9.92.090.[1] The Court of Appeals affirmed the conviction and sentence. *State v. Pettitt*, 22 Wn. App. 689, 591 P.2d 862 (1979).

Petitioner first contends that he should not have been prosecuted in Washington because Washington has no

---

[1]RCW 9.92.090 provides, in pertinent part:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

jurisdiction over him. State criminal jurisdiction is established in RCW 9A.04.030, which provides, in part:

The following persons are liable to punishment:
(1) A person who commits in the state any crime, in whole or in part.

Although it appears that petitioner was amenable to prosecution by commission of a crime "in part", petitioner claims that the legislature did not intend the crime of taking and riding in a car without permission to come under the purview of this statute because of sections (2) and (4), which provide for criminal jurisdiction over:

(2) A person who commits out of the state any act which, if committed within it, would be theft and is afterward found in the state with any of the stolen property.

. . .
(4) A person who, being out of the state, abducts or kidnaps by force or fraud, any person, contrary to the laws of the place where the act is committed, and brings, sends, or conveys such person into this state.

RCW 9A.04.030(2) and (4).

Petitioner contends that because the legislature made specific reference to theft and kidnapping which take place outside the state, the legislature could not have intended for RCW 9A.04.030(1) to include the taking of a motor vehicle outside the state where the car is subsequently brought into the state.

We disagree. The crime defined by RCW 9A.56.070 includes not only taking, but also riding in a motor vehicle with knowledge that the vehicle was unlawfully taken.[2]

---

[2] "(1) Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle, whether propelled by steam, electricity, or internal combustion engine, the property of another, shall be deemed guilty of a felony, and every person voluntarily riding in or upon said automobile or motor vehicle with knowledge of the fact that the same was unlawfully taken shall be equally guilty with the person taking or driving said automobile or motor vehicle and shall be deemed guilty of taking a motor vehicle without permission." RCW 9A.56.070(1).

*State v. Scott,* 64 Wn.2d 992, 395 P.2d 377 (1964). The single crime of taking a motor vehicle without permission may be committed either by actually taking the automobile or by riding in it, knowing it to have been unlawfully taken. *State v. Scott, supra* at 993. Although the vehicle was taken in Oregon, the evidence supports a finding that petitioner was guilty of riding in the van in Washington with knowledge that it was unlawfully taken. It follows that the State has criminal jurisdiction pursuant to RCW 9A.04-.030(1).

Petitioner argues, however, that as a matter of statutory interpretation he cannot be prosecuted as a "rider" because he was admittedly the "taker" of the vehicle. *See* RCW 9A.56.070. If a rider is to be "equally guilty" with a taker, the two cannot, petitioner contends, be the same person. To hold otherwise, he argues, has the effect of amending the statute to read, in part: "Every person who shall intentionally *take, drive away or ride in* a motor vehicle without the permission of the owner shall be guilty of a felony." Petition for Review, at 8. Such an amendment should be accomplished by the legislature, it is argued, not by this court. This court should therefore reverse the Court of Appeals holding that a taker and a rider may be the same person.

■ There are two responses to petitioner's argument. First, the effect of the Court of Appeals ruling on the statute is not as petitioner claims. Petitioner's construction permits the "riding" prong to stand without the "knowing–it–was–unlawfully–taken" element. Without the knowledge element, there can be no criminal culpability in the rider. Second, petitioner cites no persuasive authority to support the argument that the taker and the rider cannot be the same person. As the Court of Appeals points out:

> The "riding" prong proscribes a certain activity regardless of whether the person engaged in that activity is a passenger, driver, accomplice, or taker of the vehicle.

*State v. Pettitt, supra* at 693. This result is consistent with our prior decisions. Where, by statute, several alternative

acts can constitute a single crime, proof of any one of the acts will sustain the charge. *State v. Morse,* 38 Wn.2d 927, 931, 234 P.2d 478 (1951). A person charged with the single crime of unlawfully taking an automobile can have committed the offense either by actually taking the vehicle *or* by riding in it knowing it to have been unlawfully taken. *State v. Scott, supra* at 993.[3] Thus, although petitioner has admitted taking the vehicle in Oregon, that fact does not prevent a Washington charge that he rode in the van in this state. *Either act* is sufficient, if proved, to convict him of the offense. It follows that since the State may have lacked jurisdiction to convict petitioner on the "taking" prong, RCW 9A.04.030(1), it could charge him with the "riding" prong, riding being an act which constitutes the crime of taking a motor vehicle without permission. RCW 9A.56-.070(1).

We now turn to several issues raised by petitioner regarding his sentence as a habitual criminal. Petitioner first argues that his prior conviction of the Oregon offense of unauthorized use of a vehicle is not a felony under Washington law and that consequently it cannot be counted as a felony conviction leading to sentence enhancement under RCW 9.92.090. This precise issue came before us this term in *State v. Rinier,* 93 Wn.2d 309, 609 P.2d 1358 (1980), and we concluded that conviction of the Oregon offense does constitute a felony conviction under the laws of Washington. *See State v. Rinier, supra.*

Petitioner also had a 1971 conviction in Oregon for taking and using a motor vehicle without permission. Ore. Laws of 1965, ch. 552, § 1, p. 1079 (formerly Ore. Rev. Stat. § 164.670, repealed January 1, 1972; Ore. Laws of 1971, ch. 743, § 432, p. 2002).[4] He claims that offense is likewise not a felony under Washington law. Taking and using a motor

---

[3]The defendant in *State v. Scott, supra,* was charged under the old statute, but the elements of the offense are identical to those now codified as RCW 9A.56.070. Laws of 1919, ch. 64, § 1, p. 131 (formerly RCW 9.54.020).

[4]The statute provided, in pertinent part:

vehicle without permission is similar, however, to the current Oregon offense of unauthorized use of a vehicle (Ore. Rev. Stat. 164.135(1)), which we discussed in *Rinier*. Both crimes share the following elements: (1) unlawfully taking or using (2) a vehicle (3) of another (4) without consent of the owner. Since *Rinier* holds that these elements are sufficient to constitute a felony under Washington law, it follows that the offense of taking and using a motor vehicle without permission would be a felony. Accordingly, the prosecutor was entitled to count both Oregon convictions as felonies for purposes of filing the supplemental sentencing information pursuant to the habitual criminal statute, RCW 9.92.090.

Petitioner next contends that the Lewis County prosecuting attorney's mandatory policy on filing habitual criminal informations is improper for two reasons.[5] First, he argues that a policy which prevents the prosecutor from considering mitigating factors is a failure to exercise discretion, which may, as in this case, result in an unfair and arbitrary result. Second, he contends that the policy as implemented did not afford minimum procedural due process guaranties.

It is firmly established that a prosecutor has wide discretion to charge or not to charge a suspect. *State v. Lee*, 87 Wn.2d 932, 933–34, 558 P.2d 236 (1976), *appeal dismissed*, 432 U.S. 901, 53 L. Ed. 2d 1074, 97 S. Ct. 2943 (1977); *State v. Jacobsen*, 78 Wn.2d 491, 498–99, 477 P.2d 1 (1970); *State v. Thomas*, 16 Wn. App. 1, 15–16, 553 P.2d 1357 (1976); *State v. Nixon*, 10 Wn. App. 355, 359, 517 P.2d

---

"164.670. (1) Every person who takes or uses without authority any vehicle, *watercraft or aircraft* without intent to steal it, or is a party to such unauthorized taking or using, shall be punished upon conviction by imprisonment in the penitentiary for not more than two years, or by a fine of not more than $500." Ore. Laws of 1965, ch. 552, § 1, p. 1079.

[5] The policy was in effect at the time petitioner was charged and convicted. The present prosecuting attorney for Lewis County indicated at oral argument that his office no longer adheres to a mandatory policy with respect to the habitual criminal statute.

212 (1973); *and see Oyler v. Boles,* 368 U.S. 448, 456, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962). The discretion lodged in the office necessarily assumes that the prosecutor will exercise it after an analysis of all available relevant information. This concept has recently been reiterated in another context by the United States Supreme Court:

> The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest. Prosecutors often need more information than proof of a suspect's guilt, therefore, before deciding whether to seek an indictment.

(Footnote omitted.) *United States v. Lovasco,* 431 U.S. 783, 794, 52 L. Ed. 2d 752, 97 S. Ct 2044 (1977), quoted in *State v. Cooper,* 20 Wn. App. 659, 662–63, 583 P.2d 1225 (1978).

Moreover, it is recognized within the legal profession that the exercise of prosecutorial discretion is an important and delicate component of the office:

> (b) The prosecutor is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions.

*ABA Standards Relating to the Prosecution Function and the Defense Function* 25 (Approved Draft, 1971).

> [T]he essence of the concept of discretion is the *flexibility to cope with myriad and unique circumstances.*

(Italics ours.) *ABA Standards, supra* at 65.

> The broad discretion given to a prosecutor in deciding whether to bring charges and in choosing the particular charges to be made requires that the greatest effort be made to see that this power is used fairly and uniformly. *By its very nature the exercise of discretion cannot be reduced to a formula.*

(Italics ours.) *ABA Standards, supra* at 93.

Indeed, this court has recognized the necessity for the exercise of sound discretion by public officials. We have held in several instances that a trial court may order a public official to exercise discretion, if the official has refused to do so. *State ex rel. Klappsa v. Enumclaw,* 73

Wn.2d 451, 453, 439 P.2d 246 (1968); *State ex rel. Stephens v. Odell,* 61 Wn.2d 476, 480, 378 P.2d 932 (1963); *State ex rel. Yeargin v. Maschke,* 90 Wash. 249, 253, 155 P. 1064 (1916).

In the present case, the prosecutor (now former prosecutor) admitted that he relied on the record alone in deciding to file the habitual criminal information. He testified that he did not consider any mitigating circumstances in reaching his decision, and that he could imagine no situation which would provide for an exception to the mandatory policy.

■ In our view, this fixed formula which requires a particular action *in every case* upon the happening of a specific series of events constitutes an abuse of the discretionary power lodged in the prosecuting attorney. Moreover, *State v. Worthey,* 19 Wn. App. 283, 576 P.2d 896 (1978), cited by the State, is inapposite. Not only did the court find no arbitrary action in that case, the record made clear that the prosecutor actively exercised his discretion in deciding to file the habitual criminal information. *State v. Worthey, supra* at 285–86.

Accordingly, we remand the matter for resentencing based on a recommendation reached through the exercise of prosecutorial discretion. This disposition makes it unnecessary to address petitioner's contention that the mandatory policy lacks minimal procedural due process guaranties. At oral argument the present prosecuting attorney assured the court that the Lewis County procedures used to arrive at a decision to file a habitual criminal information are "virtually identical" to those employed by the King County prosecuting attorney. We approved the previous King County standards in *State v. Lee, supra* at 934–35, and we have recently held that King County's modified procedures likewise provide for adequate due process. *State v. Rowe,* 93 Wn.2d 277, 609 P.2d 1348 (1980). *See also State v. Gilcrist,* 91 Wn.2d 603, 590 P.2d 809 (1979); *State v. Nixon, supra.* Utilization of either set of standards by the prosecutor on

remand would afford adequate protection to petitioner in the resentencing proceeding.

This result likewise renders premature any consideration of petitioner's argument that the life sentence imposed under the mandatory policy constitutes cruel and unusual punishment under the eighth amendment to the United States Constitution and Const. art. 1, § 14.

We affirm the conviction for taking a motor vehicle without permission, but reverse that portion of the Court of Appeals decision which upholds the mandatory filing policy under the habitual criminal statute. The case is remanded for resentencing in a manner consistent with this opinion.

UTTER, C.J., and STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

ROSELLINI J. (dissenting)—I concur in the opinion of Williams, J., holding that all prior convictions were felonies. I dissent to that part of the opinion which holds that a prosecutor is *required* to exercise discretion in filing habitual criminal information.

The majority misreads the holding of *State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976). In that case the practice of the prosecutor was to file the habitual criminal information in certain selected cases rather than to prosecute all eligible individuals under the habitual criminal statute. This procedure was challenged as a denial of equal protection. The majority held that equal protection was not denied, because the decision whether to file a habitual criminal charge was based in part on the prosecutor's ability to prove the conviction of prior felonies. It appeared, however, that factors other than availability of proof were considered, and the appellant in *Lee* argued that he was denied due process of law because he was not allowed to participate in the process of deciding whether to file the habitual criminal charge. The majority upheld the prosecutor on this score, also, holding that the judicial hearing on the charge was sufficient to satisfy the requirements of due process.

My dissent, joined by Utter, C.J., maintained that the statute was mandatory and left no room for prosecutorial discretion, and that even if some discretion is allowed, it must be guided by justifiable standards.

That case does not stand for the proposition that a prosecutor *must* exercise discretion.

In the instant case, there is no denial of equal protection. It was the prosecutor's practice to file a habitual criminal information in every case where there were three prior felony convictions. All persons within the statutory classification were treated equally. RCW 9.92.090 provides in pertinent part:

> Every person convicted . . . of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, . . . shall be punished by imprisonment in the state penitentiary for life.

The statute makes it clear that every person who falls into the ambit of the statute *shall* be sentenced to life imprisonment. This statute is mandatory and requires that the prosecutor file a supplemental information charging each such person with being a habitual criminal. It does not say that certain persons may be charged and others may not, and it provides no standards for the exercise of prosecutorial discretion. Here the prosecutor followed the mandate of the statute.

But assuming the prosecutor has discretion in seeking the enhanced penalty, the evidence nevertheless justifies his action here. The penalty for the status of habitual criminal (for one who has been previously convicted of two or more felonies) is imprisonment in the state penitentiary for life. This may appear to be a disproportionate punishment for the crimes committed by the petitioner. However, *life imprisonment* does not mean "life in prison." The Board of Prison Terms and Paroles has the authority to set the maximum and minimum terms a person must serve. The present rule of the Board sets the maximum sentence for a habitual criminal at 15 years. If the prisoner does not violate any rule of the institution, he is given one–third

time off for good behavior. In that case, the sentence results in a 10–year minimum. The 10–year minimum is served concurrently with the sentence imposed for the crime of which the defendant was last convicted. Thus, "life imprisonment" means a 10–year sentence, with possible lifetime parole.

Let us examine whether the prosecutor acted unfairly in asking for the enhanced penalty. Pettitt is an Oregon resident with three prior felony convictions: (1) taking a motor vehicle without permission (1971); (2) second–degree burglary (1972); and (3) unauthorized use of a vehicle (1975).

The petitioner took a van from a Portland, Oregon, parking lot and drove it into Lewis County, Washington, where he was arrested in the van for driving while under the influence of intoxicants.

The statistics of the Washington State Patrol reveal that 50 percent of highway fatalities are caused by drunken drivers. The petitioner, in the act of driving this vehicle while under the influence of intoxicants, was a potential highway killer. His act involved violence or potential violence to property and persons.

The petitioner, since 1971 to the present, has repeatedly engaged in criminal activities. Three previous convictions and sentences did not deter the petitioner. He has continued to engage in criminal activities. Neither the majority nor any commentator known to me have explained how the public can protect itself from the predatory action of the habitual criminal, except by incarceration.

The petitioner has shown through his actions that he cannot conform his conduct to the behavioral requirements of society. The State has a strong interest in protecting its citizens from the criminal activities of recidivist offenders. Undoubtedly when the legislature enacted the habitual criminal statute, it had in mind this problem of recidivism. The statute was passed to protect the citizens of this state from such offenders.

A report of the Administrator for the Courts shows: Of 1,061 felony offenders who were sentenced during June

through November 1979, 227 (or 21 percent) were committed to prison. Of those sent to prison:

1. 36.1 percent had two or more prior juvenile convictions;

2. 78.6 percent had one or more prior adult convictions; .

    a. 35.8 percent had one or more prior adult convictions for crimes against persons and

    b. 65.6 percent had one or more prior adult convictions for crimes against property; and

3. 61.7 percent had one or more prior adult incarcerations.

Thus the problem of recidivism is apparent.

The majority's remand does not serve the proper administration of justice. If the prosecutor decides to again file habitual criminal charges,[6] it will be necessary to bring the defendant from the state penitentiary at Walla Walla, impanel a jury, and have a trial.

The judicial district of Lewis County has two superior court judges. The caseload of Lewis County in 1978 shows 1,836 filings; in 1979, the load was estimated to be 2,206, or 1,103 cases per judge. The standard of a manageable caseload is 700 filings per judge. If the standard is applied, another superior court judge will be needed to keep the trials current. The backlog of cases would indicate that there may be anywhere from 6 to 9 months' delay before a trial may be had.

After a second useless trial, undoubtedly we will be called upon to review the case again. Being an indigent defendant, the petitioner will be furnished a free attorney for his case. This total waste of judicial time will not improve the criminal justice system, but will frustrate it.

To what avail is such a trial? The petitioner has no defense. The State will prove the record of his past three convictions and he will again be found to have the status of habitual criminal.

---

[6]The prosecutor in one of the series of cases of which this is a part stated in ʻ‌ᴠen court that he would file a new charge against the defendant.

The majority in its distaste for the habitual criminal statute evidently hopes that the prosecutor will not file habitual criminal charges again, in the interest of saving judicial time and money. To my mind, it is inappropriate for the court to place the prosecutor on the horns of a dilemma in order to frustrate the legislature's clearly manifested purpose.

I would affirm.

WRIGHT, J., concurs with ROSELLINI, J.